# Cote and Wife *versus* VonBonnhorst, Administrator, &c., of Miltenberger.

*Construction of Devise.— Creation of Estates for Life and in Tail.*

A testator "devised and bequeathed" to M., one of his daughters, the one equal ninth part or share of his estate, "to have and to hold to her for and during the term of her natural life, and at and immediately after her decease," "to her children in fee; but if she should die without having children, then to her brothers and sisters, their heirs and assigns for ever." By directions in the will, certain lots of land were set apart and conveyed by the executors to her in fee, she giving bonds and mortgage thereon to the executors, the proceeds of which they were to hold in trust for her during her life, and at her death for her children, if any, and if not, then for her brothers and sisters. At the time the will was made, and up to the death of testator, she had no children, but by a subsequent marriage had children—she then with her husband filed a bill in equity for the cancellation of the bonds and mortgage, as given by mistake, for the reason that under the will she took an estate tail, which bill was dismissed by the court below: *Held*, that she took but a life estate under the will; that the bonds and mortgage were, therefore, not given by mistake; and that the bill filed for their cancellation was properly dismissed.

CERTIORARI to the District Court of *Allegheny county*.

This was an appeal to the Supreme Court, by Marcellin Cote and Mary his wife, from the decree of the court below, dismissing a bill in equity which had been filed by appellant against S. F. VonBonnhorst, administrator *cum test. annexo* of George Miltenberger, deceased.

The bill of complainants set forth, that George Miltenberger, late of Allegheny City, deceased, made and published his last will in writing, bearing date on or about the 25th day of July, A. D. 1856; that, at the time of making his said last will, and at the time of his death, was seised and possessed of a large amount of property, real and personal; that, by his said last will, he ordered and directed that his estate, real and personal, should, by his executors therein named, be divided into nine equal shares or parts, in order that the same might be divided among his lawful heirs; that, after having devised and bequeathed sundry of these shares or parts to others, he devised and bequeathed unto Mary Cote, daughter of the said testator, then Mary Tiernan, widow and without children, and, since the decease of the said testator, intermarried with and now having children by Marcellin Cote, the one equal ninth part or share of his estate, in the words following, to wit: "One other equal ninth part or share of my estate I devise and bequeath to my daughter, Mary Tiernan, to have and to hold to her for and during the term of her natural life; and at and immediately after her decease, I devise and bequeath the same to her children, if any, in fee; but if she should die without having children, then to her brothers and sisters, their heirs and assigns for ever."

[Cote *v.* VonBonnhorst.]

That by his said last will and a codicil thereto, he appointed Josiah King and Samuel Gormley executors thereof, who took upon themselves the administration and distribution of the said estate, and, in process thereof, set aside and conveyed to Mary Cote, as part and parcel of her share or portion of her father's estate, seven contiguous lots of ground in the eighth ward of the city of Pittsburgh, marked and numbered as Nos. 77, 78, 79, 80, 81, 82, and 83 in George Miltenberger's plan of a subdivision of parts of out-lots, Nos. 11 and 12, in the Manor of Pittsburgh; also, three other contiguous lots, numbered in the same plan as Nos. 98, 99, and 100; also, a ground-rent of $120, payable annually, growing and issuing out of lot No. ——, situated on Webster street, in the city of Pittsburgh.

That upon the conveyance of the said property, the executors demanded from complainants bonds in the sum of $10,950, conditioned for the payment of $5495, and a mortgage on the real estate transferred as above, securing the payment of the said bonds.

That, in order to promote the speedy division and settlement of the estate of the said George Miltenberger, and at the request of the said executors, complainants executed and delivered to the said executors bonds to the amount aforesaid, and a mortgage securing the same on the property conveyed as aforesaid by the said executors to Mary Cote; and that the only consideration for the said bonds and mortgage so executed and delivered by them, was found in the construction put by the said executors upon that clause of the said will of George Miltenberger, deceased, in which the said testator devised and bequeathed the ninth part of his estate to Mary Cote, above recited; the said executors claiming that in and by the said clause the testator had devised and conferred upon her merely an estate for life, and had constituted them, the said executors, by the terms of his said will, trustees of her children and brothers and sisters as to the remainder of the property devised to her for life, and that they held the said bonds and mortgage and the proceeds thereof in trust for her during her life, and, at her death, for her children, if any, and if there were no children, then for her brothers and sisters; averring that by the will of George Miltenberger, deceased, an estate in fee was devised to Mary Cote, and that the said bonds and mortgage so executed by her as aforesaid, were executed without any good or valuable consideration whatever, and were delivered to the said executors without any consideration for the same.

The bill further stated, that, at a certain term of the Orphans' Court, the said Josiah King and Samuel Gormley were, on their own petition, discharged by the said court from the executorship of the said estate, and Sidney F. VonBonnhorst

appointed their successor; and that the said Josiah King and Samuel Gormley had, in pursuance of the order of the said court granting their discharge, assigned the said bonds and mortgage to the said Sidney F. VonBonnhorst, their successor in office, who claims to hold the said bonds and mortgage in the same way and for the same purposes that they were held by his predecessors in office.

That they were desirous of selling portions of the real estate conveyed as heretofore stated, but were unable to sell the same for a reasonable and just price, because the mortgage above described, though executed by them without a consideration, and not equitably binding, yet stands recorded as a lien upon the said real estate.

That the said Sidney F. VonBonnhorst, notwithstanding that the said bonds and mortgage came into his possession without any consideration having been given or received for the same, had refused to deliver them up to be cancelled, but threatens and intends, when the same become due, to commence an action at law thereon, and in case he should recover judgment, to take out execution for the amount thereof.

With a prayer for relief, and for an injunction to restrain defendant from commencing any action at law on the said bonds and mortgage, and that he may be decreed to deliver up the said bonds and mortgage to be cancelled; with such other and further relief in the premises as shall seem meet, and the nature of their case may require.

On this bill a *subpœna* was awarded, and service thereof accepted by the respondent, who at first demurred, but on the 3d of August 1861, filed an answer admitting the main facts contained in the bill, but denying that, under the will of George Miltenberger, Mrs. Cote took an estate in fee simple, or that the bonds and mortgage, or any part thereof, were executed without consideration, and insisting that a good and valuable consideration existed in the will of said deceased, according to the true intent and meaning thereof, and that Mrs. Cote took only an estate for life under the will, &c.

The case was submitted to the court below on bill and answer, and, on hearing, the bill of complaint was dismissed; whereupon the case was removed into this court by the complainants, who averred here that the court below erred in dismissing the bill, and in not granting the decree prayed for.

*H. Hepburn*, for appellant, claimed that a proper construction of the devise conferred an estate tail upon the first taker, which by statutory enactment is to be construed as an estate in fee simple. The language used in the present instance creates an estate tail, under the rule of construction laid down in

Price *v.* Taylor and Wife, 4 Casey 95, McKee *v.* McKinley, 9 Id. 92, and cognate cases. But it was supposed by the court below that the limitation or modification of the doctrine found in Guthrie's Appeal and Chew's Appeal, 1 Wright 9, 23, excludes the present devise from the rule in Shelly's Case.

It is not necessary for the complainants to impugn the conclusions of the court in these cases, nor the reasoning on which those conclusions are founded. In Guthrie's Appeal and Chew's Appeal, the objects of the testator's bounty were *in esse* at the time of the execution of the will, and of the testator's death; and the word *children* was accordingly held to be a word designatory of *persons* of the individuals who were to take under the will. Let it be conceded that the word children is to be construed as a word of purchase, when individuals answering the description are in being. It is, however, well settled, that the word *children may* be a *nomen collectivum*, signifying "heirs of the body." So much is admitted in Guthrie's Appeal. It is further settled, that the word children is to be thus construed as a word of limitation, when there is no one in being to whom the testator could have intended to refer: Wild's Case, 6 Reports 17. In Powell on Devises, where this question is discussed, the following conclusion is given: "Thus the cases have established, beyond contradiction, that a devise to a man and his children, he having none at the time of his demise, gives him an estate tail." See Burton on Real Property, 23 Law Lib. 96. To the same effect is Gernet *v.* Lynn, 7 Casey 99.

Stress may, perhaps, be laid on the form of expression used in the devise, "and *at* and immediately *after* her decease, I devise and bequeath the same to her children, if any, in fee, &c." It is true, that in some of the older cases, a distinction is recognised, in construing the word children, between a devise to a man and his children, and one to a man and, *after* his *death*, to his children. But the distinction is not a solid one, and is not sustained by more recent cases. For let it once be conceded that the word children may, in some connections, be construed as a word of limitation, and that the case of the non-existence of children at the time of the devise is such a case, and there would be no reason for distinguishing, in construction, between the word "children" and the words "issue of the body." The books are full of cases in which a devise to a man for life, and, after his death, to his issue, or to the heirs of his body, is construed as giving the first taker an estate tail. In the words of Powell, "equally inoperative to affect the construction" are the words, "immediately after his decease," in the devise over. Even assuming that they would authorize the construing the devise over, as dependent on the event of the first taker leaving no issue living at his decease, which it would be difficult to sustain, this would not affect the

antecedent estate tail, in connection, indeed, with which, the words are scarcely entitled to any observation."

No good reason can be given why a destructive effect should be given to the words " after her decease," in the case where the devise over is to *children*, used as a *nomen collectivum*, when such effect is refused in the case of a devise over to issue or heirs of the body. Nor do the later authorities demand such a distinction: Hodges *v.* Middleton, Douglas 431; Gernet *v.* Lynn, 7 Casey 94.

The construction put upon the devise by the court below will work a hardship, and may defeat the intention of the testator. From the whole tenor of the will, the chief object of the testator was to provide for his children and their offspring. But if Mrs. Cote's estate be held an estate for life, then the remainder to her children must be construed *contingent* on their surviving their mother. And this involves several difficulties. There is no *vested* remainder created, and the inheritance is in abeyance. There is no estate created to preserve the contingent remainder. To be sure, if one or more children had been *in esse* when the devise took effect, the remainder would have vested in them, and opened to let in after-born children. But such was not the case. Under this construction, moreover, if the children of Mrs. Cote should die before her, leaving issue, such issue would not inherit, which cannot be supposed to have been the testator's intention. The hardship involved in this construction is a relevant argument against it: Jordan *v.* Adams, Exchequer Chamber, February 8th 1861; Leg. Int., October 4th 1861.

An argument was advanced in the court below, derived from the use of the term " tenants for life," in a subsequent clause of the will. But be it observed that, undoubtedly and consistently with the foregoing argument, two of the other devisees, who had children living at the date of the will and death of the testator, were tenants for life; and the clause referred to is satisfied by that fact. Nor would the use of such a term, even if referring to Mrs. Cote, destroy or impair the precedent estate tail.

*E. Bradford Todd*, for appellee, contended that, under the will of her late father, George Miltenberger, his daughter, Mary Cote, late Mary Tiernan, *née* Miltenberger, took only a life estate. That the principal case does not come within the " much talked of rule in Shelly's Case" proper, or of its congeners, which exists only where the word " heirs" is used by the testator, although there is 'a class of cases where other words may be brought within the rule, if such be the intention of the testator. Where the word " heirs" is used there is a presumption in law that the case is within the rule, which is more or less strengthened by other expressions in the will, either closely connected with the clause containing the word " heirs," or in other parts

of the will, yet in their absence the presumption is of course to be adhered to. But where the word "children" is used the presumption is, that it is a word of purchase. No attempt is made to oppugn the doctrine that the rule in Shelly's Case is well settled law in Pennsylvania. Without wading through the mass of cases on the subject, we rely especially on Guthrie's Appeal, 1 Wright 9, and Chew's Appeal, 1 Id. 23, decided since the ruling of McKee *v.* McKinley, 9 Casey 92, Williams *v.* Leech, 4 Casey 89, and Nagle's Appeal, 9 Casey 89, cited by the counsel for the complainants in the court below, but not relied upon by him here, and indeed not to be reconciled with the opinions held in Guthrie's and Chew's cases. In this case neither the words "heirs of the body" nor "issue," which in Guthrie's Appeal were held equivalent to "children," when used to describe the same object; are used by the testator.

The case is not distinguishable from Guthrie's and Chew's Appeals, by reason that "the gift is to them distributively as tenants in common or to their heirs," for the words used are "for and during the term of her natural life, and immediately after her decease I devise and bequeath the same to her children, if any, in fee, but if she should die without leaving children, then to her brothers and sisters, their heirs and assigns for ever." The words "in fee" and *her brothers and sisters*, by our law, create a tenancy in common as strongly as if the words "tenants in common" or "to their heirs" themselves had · been expressly used.

The doctrine of the chief justice, in Williams and Wife *v.* Leech, 4 Casey 89, "that since the Act of 1833, an estate tail general may descend according to our law of lineal descents, and hence a devise to children, to take distributively, is a valid definition of lineal descent, and therefore of entailment,. and now, by consequence, since our Act of Assembly converting a fee tail into a fee simple," is denied in Guthrie's Appeal.

In the last-mentioned case the fact that there are provisions in the will "which show an intent that the remainder-men shall not take *as heirs* of the tenant for life, because the gift is to them distributively, as tenants in common or to their heirs," is only an additional reason superadded to what his Honour had previously held; but without this make-weight the ruling of the · court is sufficient to decide the estate in Mrs. Cote to be but a life estate. An attempt is made to distinguish this case from Guthrie's Appeal, on account of the fact that "at the time when that will was made Elizabeth Bones had several children, and all her children were born before the will was proved, and probably before the death of the testator;" whereas, in our case, Mrs. Cote (then Tiernan) had no children when George Miltenberger's will was made.

[Cote *v.* VonBonnhorst.]

It is true that in Gernet *v.* Lynn, 7 Casey 94, Lewis, C. J., adverts to the fact that "some of the children were *in esse* at the date of the will, and also at the time it takes effect," and in this particular it resembled Guthrie's Appeal; but Strong, J., says in Guthrie's Appeal, "even in Williams *v.* Leech, 4 Casey 89, there were no children of the first taker at the date of the will, nor even when it took effect."

There is a clear indication in the will of George Miltenberger, in a part which follows the clause naming Mary Tiernan, that he intended to give only a life estate. The words are, "And in such division or disposition of my real estate, I authorize the *tenants for life,* above mentioned, to determine what part of my real estate shall be taken for the share or portion represented by them respectively, or in which they are interested; and their selection shall be binding and conclusive on those holding the remainder or remainders therein." See Miller *v.* Lynn, 7 Barr 446. We refer also to the last clause in his will, which is as follows, viz. :—

"In case the share of *any of my daughters* should be converted into money, by the sale of my real estate as aforesaid, then I direct my executors, or the survivors of them, to invest the same in good security, and the interest thereof to be paid over semi-annually to my said daughters respectively, *for life,* and *at their decease respectively* to pay the *principal thereof to their children,* or representatives as hereinbefore directed."

The prayer of the complainants is, that the estate vested in Mary Cote shall be decreed to be a fee tail, and now by virtue of the Act of Assembly, relating to fees tail, a fee simple, thereby enabling her and her husband to sell the entire estate. This we resist. It is not necessary to the vesting of the contingent remainder in Mrs. Cote's children, that any one of them should be living at the time of making the will, or at the death of the testator. If any one of such children had been living when Mr. Miltenberger died, the contingent remainder would be vested in that child, subject to be opened to let in any after-born children. But although Mrs. Cote had no child until after her father's death, the contingent remainder either vested on the birth of that child, or will vest upon such child's surviving its mother, if that be construed to be the contingency contemplated by its grandfather. See Williams and Wife *v.* Leech *et al.,* 4 Casey 93. If the case before the court be construed to be an executory devise, no particular estate is necessary to support it. But the presumption is, that it is a contingent remainder, and we so regard it. Then is it indispensable that a fee simple should precede such remainder in order that it may be valid? We answer, no; a vested freehold is sufficient: 4 Kent's Com. 236. Now, a life estate in Mrs. Cote is a vested freehold. How much

[Cote *v.* VonBonnhorst.]

the brothers and sisters, who are in the second remainder, may be affected by the happening of the contingency, we do not undertake to discuss.

Complainants' argument adds: "Under this construction, moreover, if the children of Mrs. Cote should die before her, leaving issue, such issue would not inherit, which cannot be supposed to have been the testator's intention." To this it may be replied that if the testator had, in express terms, made the remainder to extend to the issue of Mrs. Cote's deceased children, if she left no children living at the time of her death, such grandchildren would be too *remote* to take. They would be children of Mrs. Cote's children, not *in esse* either at the time of the testator's death or at the death of Mrs. Cote. If this be so, no argument of an intention in the testator, adverse to a life estate, can be drawn from his not directing that which the law would not carry into effect. It is to be noted, also, that while the testator, in his devises to his other daughters, expressly provides that the offspring of such daughter's children as may be deceased at the time of his said daughter's death, should represent their deceased parents. In his devise to his daughter, Mrs. Cote, he makes no provision for *her* grandchildren whatever, thus negativing the idea of it being his intention that they should inherit in the event of their parents dying before their mother, Mrs. Cote.

The opinion of the court was delivered, January 6th 1862, by

STRONG, J.—Whether a court of equity would relieve against such a mistake as is alleged in the complainants' bill—whether it would order to be surrendered and cancelled a bond and mortgage given by a devisee in pursuance of a family arrangement, for the reason that both parties were mistaken in the nature and extent of the interest devised to the mortgagor—might be worthy of inquiry, if it clearly appeared that a mistake had been made. But the inquiry is needless in this case. The will of George Miltenberger gave to Mrs. Cote, the complainant, no more than an estate for life, and there was therefore neither a mistake of fact nor of law. The testator first made provision for his widow, and then directed all the rest and residue of his estate to be divided into nine equal shares or parts. After having given to each of his other daughters an estate for and during her natural life in one of these shares, he devised to Mrs. Cote, the complainant, in the words following: "one other equal ninth part or share of my estate, I devise and bequeath to my daughter, Mary Tiernan (now Mary Cote), to have and hold to her for and during the term of her natural life, and at and immediately after her decease, I devise and bequeath the same to her children, if

[Cote *v.* VonBonnhorst.]

any, in fee; but if she should die without leaving children, then to her brothers and sisters, their heirs and assigns for ever."

We spend no time in showing that under a devise to one for life, with a remainder to his or her children, the first taker has no freehold of inheritance. That such is the general rule is beyond doubt, and it is not denied by the complainants. But it is insisted that because the devisee in this case was without children at the time when the will was made and when it took effect by the death of the testator, her case is not within the general rule, and that she took an estate tail. In taking this position the complainants overlook the fact that the devise to the children of Mrs. Cote was not in terms immediate, and that the testator did not intend for them any present enjoyment. The devise to the children was a gift in remainder. Every reason therefore fails for treating the word "children" as a word of limitation. In Wild's Case, 6 Coke's Rep. 16 v and 17 a & b, it was resolved that if A. devises his lands to B. and to his children or issues, and he hath not any issue at the time of the devise, the same is an estate tail. The reason given for this resolution was "that the intent of the devisor is manifest and certain that his (B.'s) children or issues should take, and as immediate devisees they cannot take, because they are not *in rerum natura,* and by way of remainder they cannot take, for that was not his intent, for the gift is immediate; therefore such words shall be taken as words of limitation, *scil.* as much as children or issues of his body." Such was also the ruling in Davie *v.* Stevens, Doug. 321; and other similar decisions have been made. But the reason ceases entirely when the gift to the children instead of being immediate is by way of remainder. In such a case the word "children" may have its natural signification, consistently with the entire intent of the testator, and therefore it was also resolved in Wild's Case, "that if a man devises land to husband and wife, and after their decease to their children, or the remainder to their children, although they have not any child at the time, yet every child which they shall have after may take by way of remainder, according to the rule of the law, for his intent appears that the children shall not take immediately, but after the decease of (Rowland and his wife") the first takers. When a remainder is limited to children, and it can take effect as such, it must, and consequently the word cannot be a word of limitation, and enlarge the estate limited to the parent for life into an estate tail. In 1 Ball & Beatty 459, Downes, C. J., well stated the doctrine of Wild's Case and the decisions founded upon it, as establishing these propositions. "When the devise is in terms immediate, and so intended by the testator, and the description of the persons to take is general, then none that do not fall within the description at the time of the testator's death,

[Cote *v.* VonBonnhorst.]

can take; therefore the afterborn must be excluded. But where the enjoyment of the thing devised is by the testator's expressed intent not to be immediate by those among whom it is finally to be divided, but is postponed to a particular period, or until a particular event shall happen, then those who answer the general description at the period or when the event happens on which the distribution is to be made, are entitled to take." The distinction noticed is an obvious and well recognised one; so obvious that Mr. Powell, in his treatise on Devises, Vol. 2, p. 495, note q, remarks that "where a limitation is to a parent for life, and to his children by way of remainder, there seems to be no ground, whether there are children or not, for holding the parent to be tenant in tail. It is true that in Hodges *v.* Middleton, Doug. 431, Lord Mansfield and the King's Bench inclined to think that when a testatrix devised to A. for life, and after her death to her children, charged with the payment of an annuity, with remainder over on failure of children, A. took an estate tail, but if not, her children did. This case is doubted by Mr. Powell, and it is not in point, for the devisee for life had seven children living at the death of the testatrix.

Without prosecuting an examination of the cases further, we have said enough to make it apparent that Mrs. Cote took only a life estate under the will of her father. The bond and mortgage which she seeks to have cancelled were not given in mistake. Her bill was consequently without any foundation upon which to stand, and it was properly dismissed by the District Court.

> The decree of the District Court, dismissing the complainants' bill, is affirmed, with costs.