.Julia T. Foster et al., Plffs. in Err., *v.* Thomas McKenna.

A clause in a will devising to each of testator's daughters "the income of one undivided half of all my real estate for her life only, and on the death of either of my daughters her share in my estate to go to her children in fee simple" gives the daughters an estate for life only. This primary rule of interpretation is not controlled by the use of the words "to go to her children in fee simple," nor by a subsequent provision that the husbands of her daughters should not control, inherit or even claim an estate therein; nor by the use of the words "to inherit" in the following clause: "I further provide that in case neither of my daughters are living at the time of my death or children of theirs living to inherit the property which I give to my daughters, I then give," etc.

The word "children" in a devise is primarily a word of purchase, and can only be construed as a word of limitation when there is a clear manifestation in the body of the will that such was the intention of the testator.

(Argued November 2, 1887. Decided November 11, 1887.)

October Term, 1887, No. 175, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ. Error to the Common Pleas No. 2 of Allegheny County to review a judgment entered upon a case stated in favor of defendant. Affirmed.

The following are the facts of the case as agreed upon by the parties:

On May 18, 1875, Julia Foster, now deceased, then a resident

of the city of Philadelphia, made her last will and testament, the same being in her own handwriting, which was duly probated on the 14th day of January, 1886. At the time of making said will she had three children living—one son, Heron, and two daughters, Julia and Rachel, the latter being the plaintiffs in this action, all of whom survive her. Said will contains, *inter alia,* the following provisions, to wit:

"After any debts I may have at the time of my death are paid, I give to my daughters, Julia and Rachel, all my personal estate of every kind whatsoever, to be equally divided between them. And to each of them I devise the income of one undivided half of all my real estate for her life only, and on the decease of either of my daughters her share in my estate to go to her children in fee simple. In case of the death of either of my daughters without children her interest in my estate to go to her sister for life, and to the children of that sister in fee. I especially make it a condition of the foregoing devise to my daughters, that all property of whatsoever sort willed by me to them cannot be controlled, inherited, or even a life interest claimed, by their husbands. I further provide that in case neither of my daughters are living at the time of my death, or children of theirs living to inherit the property which I give to my daughters, I then give to the three sons of my son Heron— respectively named: James Heron, Herbert Spencer, and Ralph Gordon—the interest, but not the principal, of my estate, to be equally shared between them, providing if they are minors their mother is by law made their guardian," etc.

The testatrix died, seised of the lot of ground hereinafter mentioned and described, being part of the real estate devised by her as above mentioned, to her said daughters, Julia and Rachel, who are both unmarried and without children.

On the 29th day of September, 1886, said Julia T. Foster and Rachel G. Foster entered into a contract in writing with Thomas McKenna, defendant, signed and sealed by all of them, by which said Julia and Rachel covenanted and agreed to sell and convey in fee to said Thomas McKenna, in consideration of the sum of $6,000, a certain lot of ground and premises situated in the city of Allegheny, Pennsylvania, situated on the north side of South avenue, at corner of a lot of ground now or late of Priscilla Rogers. Beginning 50 feet west from School street, and thence running westwardly along South avenue 50

feet, to a lot of ground now or late of William McKee; thence northwardly parallel with School street 150 feet and 8 inches; thence eastwardly 49 feet and 7 and ½ inches to said lot of ground late of Priscilla Rogers; and thence by the same, southwardly parallel with School street 157 feet and 4 inches to South avenue, the place of beginning, with buildings, etc., thereon, erected, etc.

And by said article of agreement it was further agreed between them that should there be any defect discovered in the title under which said Julia and Rachel Foster hold said premises, the $50 hand money paid should be returned to said Thomas McKenna.

And said Thomas McKenna expressed his willingness to perform his said contract to purchase, in case said Julia and Rachel Foster could make him a good and marketable title in fee simple to the above described lot of ground and premises; but he refuses to accept the title tendered, alleging that said Julia and Rachel Foster have only a life estate therein, and could not make a good and marketable title in fee, according to the terms of the article of agreement.

If it be the opinion of the court that plaintiffs are seised of a fee-simple estate under their mother's will, then judgment to be entered for plaintiffs in the sum of $50; but if the court be not of that opinion, then judgment to be entered for defendant. Costs to follow judgment, either party reserving the right to sue out a writ of error without oath or bail.

The following is the opinion of the court below, EWING, P. J.

There is no doubt that the will of their mother gives to the plaintiffs a freehold estate in the lot of ground in question. The devise to them of the income for life is a devise of the possession for the same period.

The devising clause of the will is in these words: "And to each of them (the plaintiffs) I devise the income of one undivided half of all my real estate for her life only, and on the decease of either of my daughters her share in my estate to go to her children in fee simple."

If the word "children" is to be read as heirs of her body, then under the rule in Shelley's Case, 1 Coke, 88, the devise vests a fee simple in each of the daughters of the testatrix. Guthrie's Appeal, 37 Pa. 13.

In the same case Justice STRONG says that he has read no case where the primary sense of the word "children" had been changed by the context, except where it was followed by some such word as "issue." This to show how well established is the rule that the primary sense of the word "children" is that it is a word of purchase and not of limitation. No one will doubt that standing alone the words of Mrs. Foster's will above quoted would devise a life estate to her daughters and the remainder to the children as purchasers and not as heirs.

Unless the primary sense of the word is clearly overcome by the other portions of the will the devise is to be held as vesting the remainder in the children as purchasers. If it is so overcome and if it is evident from the whole will that the testatrix by "children" intended heirs of the body, the contention of the plaintiffs must prevail. Haldeman v. Haldeman, 40 Pa. 29.

Counsel for plaintiffs have argued very ingeniously that the whole will shows that the testatrix by "children" meant the heirs of her daughters: (1) By the use of the words "to go to her children in fee simple;" (2) by the provision that the "husbands of her daughters should not control, inherit, or even claim a life estate therein;" and (3) the use of the words "to inherit" in the following clause.

We can see nothing whatever in the first reason. In the second it is simply the expression of an extreme caution to prevent any future husband controlling any of the property, real or personal, which she gave to her daughters. As to the third reason these words "to inherit" occur in this clause of the will, —to wit, "I further provide that in case neither of my daughters are living at the time of my death, or children of theirs living to inherit the property which I give to my daughters, I then give," etc.

The word "inherit" in this clause is not used by the testatrix in its technical meaning.

If the daughters died before their mother their children would not inherit any of this property. In that case they would have taken as devisees of their grandmother, the testatrix; they would be in as purchasers.

These clauses and expressions in the will taken separately and together, do not seem to us to vary the meaning of the word "children" as used in the devising clause above quoted.

On the other hand there are other expressions, and the care-

ful use of the word "children" to the exclusion of the words "issue" or "heirs" in other parts of the will, which, in our judgment, overbalance any of the expressions that might raise a suspicion that the testatrix did not use the word "children" advisedly.

In each of the recent cases of Jones v. Cable, 34 Pitts. L. J. 282, and Affolter v. May, 115 Pa. 54, 8 Atl. 20, there was much more in the will to indicate that the word "children" was but a word of limitation than in this case, and it was held to be insufficient to control the primary meaning of the word.

We conclude, therefore, that the plaintiffs have but a life estate in the property described in the case stated, and the law is with the defendant.

And now July 9, 1887, after argument and upon consideration, the court being of the opinion that the law is with the defendant, judgment is entered on the case stated in favor of the defendant.

Plaintiffs took this writ, assigning for error this action of the court.

*James S. Williams* and *John A. Emery,* for plaintiffs in error.—It being a well-settled principle of law that a devise of the income of land is equivalent to a devise of the land itself, for so long as the income is given (France's Estate, 75 Pa. 221; Potts's Appeal, 30 Pa. 168), there can be no dispute that the plaintiffs have, under their mother's will, at least a freehold in the real estate described in the case stated.

The sole question, then, for determination in this case is, whether the word "children," used in naming those who are to take in remainder, is to be construed as a word of limitation, or as a word of purchase.

It is conceded that primarily it is to be construed as a word of purchase, upon the presumption that it was intended to designate definite objects of the gift; but all authorities agree that the technical significance of such a term will yield, when from inconsistent expressions it appears clear that the testator intended otherwise.

This intention of the testatrix, in disposing of the remainder, must then first be ascertained, for the rule in Shelley's Case is a rule of construction and not of interpretation, and takes effect

only when the interpretation of the will has been ascertained. Yarnall's Appeal, 70 Pa. 335; Perrin v. Blake, 1 Hargrave, Law Tracts, 504; Guthrie's Appeal, 37 Pa. 13.

Where it appears that the issue is to take by inheritance from the first devisee the inheritable estate vests as such in the devisee. Potts's Appeal, 30 Pa. 170; Physick's Appeal, 50 Pa. 135; Steacy v. Rice, 27 Pa. 75, 67 Am. Dec. 447.

Whenever the terms of the limitation can be fairly and justly interpreted to mean heirs or heirs of the body, an estate of inheritance will be presumed to have been intended by the testator. Dodson v. Ball, 60 Pa. 500, 100 Am. Dec. 586; Haldeman v. Haldeman, 40 Pa. 29.

If it were true that the testatrix, in using this expression, was speaking of a time when the children of the first taker would not, in point of law, take by inheritance,—that would only show how imperfect was her knowledge of the law, and not in the least affect her intention.

But was her use of the term at all incorrect? The act of April 8, 1833, 2 Purdon's Digest, 1711, § 14, provides that a devise to a lineal descendant shall not lapse by reason of the decease of such devisee in the lifetime of the testator, if such devisee shall leave issue surviving, but shall be good and available in favor of such issue, with like effect as if such devisee had survived the testator. Under this statute the issue would inherit what the testatrix had given her daughters, in case of their death in her lifetime. The effect of that statute is to make the devisee "a stock or *propositus*—not to own or control, but to transmit the devise" to the issue, who thus take a derivative title. Newbold v. Prichett, 2 Whart. 46. The case of Clark v. Scott, 67 Pa. 446, cited by the defendant, was entirely different from this. There the devise was expressly transmitted to the heirs by the will, the heirs clearly took as purchasers; but here the intention of the testatrix is equally clear that it is to be transmitted by the law, which, under the terms of the statute, is with like effect as if it had actually vested in the daughters and descended from them to their children.

What does the will indicate to contradict this intention that the children should take by inheritance?

It cannot be held that such is the effect of the previous limitation of the estate to her daughters for life only, because our inquiry is not as to the nature of the estate intended to be given

to the daughters, but solely as to how the remainder-men were intended to take, whether as descendants or purchasers. Perrin v. Blake, 1 Hargrave, Law Tracts, 504.

The mere use of the word "children" indicates nothing as to this intention. "It in itself ascertains only the object of the grant or devise, not at all the nature or extent of the estate given." Guthrie's Appeal, 37 Pa. 15.

It is conceded that in most cases where the primary meaning of the word "children" has been held to be changed by the context, such other qualifying words are present; but Mr. Justice STRONG, whose *dictum* in Guthrie's Appeal was quoted by the court below, does not say that there are no such cases, nor that the presence of such words is absolutely necessary.

Doe *ex dem.* Jones v. Davies, 4 Barn. & Ad. 43, is a case where the primary meaning of "children" was held to be changed without any such qualifying words, and there are doubtless others. See Mellish v. Mellish, 2 Barn. & C. 520.

The fact that the children to whom the remainder is given are unborn, has always been held to evince an intention to use the word in the sense of heirs of the body. Smith, Executory Interests, 537; Haldeman v. Haldeman, 40 Pa. 35.

"Children" is the word of ordinary conversation to express that thought—its usual, legal import to the contrary notwithstanding. Blair v. Miller, 37 Phila. Legal Int. 414.

The intention to dispose of the entire estate is always held to favor such a construction as will pass a fee. Geyer v. Wentzel, 68 Pa. 84; Huber's Appeal, 80 Pa. 357; Cockins's Appeal, 111 Pa. 26, 2 Atl. 363.

The fact that a contrary construction would violate the intention of the testator in this respect is always a strong argument in favor of construing words which are properly descriptive of particular persons only, in a collective sense as including the descendants of the first takes. Wyld v. Lewis, 1 Atk. 432.

Where a will makes no devise over after a devise in remainder, that fact also is to be weighed, in support of the same construction, in ascertaining the testator's intention. Huber's Appeal, 80 Pa. 357; Grove's Estate, 58 Pa. 432; Oyster v. Oyster, 100 Pa. 540, 45 Am. Rep. 388.

Therefore the word "children" should be construed as a word of limitation, thereby vesting an estate tail in the plaintiffs, which under the act of April 27, 1855, becomes an estate in fee

simple; and the judgment of the court below should be reversed.

*David W. Bell,* for defendant in error.—The one question here in regard to Mrs. Foster's will is this: Did she intend to devise to her two daughters, Julia and Rachel, a life estate only, or an estate of inheritance?

In order to overcome the presumption that she devised the remainder in fee to the children as such, and not as heirs of their mothers, the intention of testatrix must be clear. Conjecture, doubt or equilibrium will not suffice. The word "children" in its natural import, is a word of purchase, and not of limitation. Guthrie's Appeal, 37 Pa. 13; Haldeman v. Haldeman, 40 Pa. 29; Robins v. Quinliven, 79 Pa. 333; Huber's Appeal, 80 Pa. 348; Jones v. Cable, 34 Pittsb. L. J. 282; Affolter v. May, 115 Pa. 54, 8 Atl. 20.

It is said that the clause in the will: "In case neither of my daughters are living at the time of my death, or children of theirs living, to inherit the property which I give to my daughters," etc., shows that she intended the children to take as heirs of her daughters. But this is a mere conjecture. It is quite as likely she meant to say, "inherit from me the property I give to my daughters." As she had previously disinherited her son, she evidently thought nothing was in the way of the children of her daughters "inheriting" (as she called it) directly from herself, should her daughters die first. It is also evident that she did not know the legal meaning of the word "inherit," but she did know that if the daughters were dead their children could not get from their mothers what their mothers never had owned. In that event the children of the daughters would have been purchasers, and the use of the word "inherit" would not have changed that result. Clark v. Scott, 67 Pa. 446.

PER CURIAM:

An inspection of the opinion of the court below satisfies us beyond doubt that a true and legal construction of the will of Mrs. Foster is therein contained; and we therefore adopt it as the law of the case.

The judgment is affirmed.