## Sechler *v.* Eshleman, Appellant.

*Wills—Devise—Estate tail—Rule in Shelley's case—Fee simple estate.*
A devise by a testator to his brother for life and after his death to the four daughters of his brother, to each an undivided one-fourth part of the land for life, and after the death of each niece, "unto her children and their heirs and assigns forever," creates an estate tail in each niece which is resolved into an estate in fee simple under the Act of April 27, 1855, P. L. 328.

Submitted May 18, 1908.   Appeal, No. 148, Jan. T., 1908, by defendant, from judgment of C. P. Lancaster Co., Dec. T., 1908, No. 21, for plaintiffs on case stated in suit of Emilie M. E. Sechler et al. v. Joseph Eshleman.   Before Fell, Brown, Potter, Elkin and Stewart, JJ.   Affirmed.

Case stated to determine the title to real estate.

Hassler, J., filed the following opinion :
This is an action to recover the price agreed upon for certain real estate in Martic township, known as the Bernard Short farm, containing 171 acres more or less.   The facts necessary for a proper disposition of the case have been agreed upon in the form of a case stated.   The plaintiffs' right to recover depends upon whether they and their sister, now de-

ceased, had an absolute title in fee simple to the real estate in question, under the will of Robert A. Evans, deceased, who died on August 28, 1889. The will is dated May 17, 1889, and the item of it under which they take their title is as follows :

" Sixteenth, I give and devise the following farms and plantations : My farm or tract of land called Pen Hill, situated in Fulton township, Lancaster County, containing one hundred and fifteen acres, be the same more or less, with the appurtenances ; also my farm in Martic township, Lancaster County, known as the Bernard Short farm, containing one hundred and seventy-one acres, be the same more or less, with appurtenances ; also my farm in West Drumore township, Lancaster County, known as my Rodgers farm, containing two hundred and thirty-five acres, be the same more or less, with the appurtenances, unto my brother, John James Evans, for and during the term of his natural life, but he shall not cut and use more of the timber growing on said farms than what is necessary to keep the fences thereon in good order and repair, and from and immediately after his decease, I give and devise the same unto my nieces, Emily Evans, Helena Evans, Marietta Evans and Elizabeth Evans, children of my said brother, John James Evans, that is, to each one, the undivided one-fourth part thereof for and during the term of her natural life ; and from and immediately after the decease of said Emily Evans, I give and devise the undivided one-fourth part of said three farms given to her for life unto her children and their heirs and assigns forever ; and from and immediately after the decease of said Helena Evans, I give and devise the undivided one-fourth part of said three farms given to her for life unto her children and their heirs and assigns forever ; and from and immediately after the decease of said Marietta Evans, I give and devise the undivided one-fourth part of said three farms given to her for life unto her children and their heirs and assigns forever ; and from and immediately after the decease of said Elizabeth Evans, I give and devise the undivided one-fourth part of said three farms given to her for life unto her children and their heirs and assigns forever. The devises hereinbefore made to the children of said Emily, Helena, Marietta and Elizabeth Evans, shall embrace and include the issue of any of such deceased child or children, and such issue

taking such part or portion thereof as his, her or their deceased parent or parents would have had taken had he, she or they been living."

John J. Evans died on January 26, 1890. At the time of the death of Robert A. Evans the four nieces mentioned in the will were unmarried, and all were living when John J. Evans died. Marietta Evans, one of the nieces, died unmarried on November 13, 1895, leaving a will, dated May 10, 1893, which was duly probated, in which she bequeathed her estate in the land which is the subject of this controversy, to her three sisters, who, with the husband of the one married sister, are the plaintiffs in this case. None of the four nieces mentioned in the will ever had any children.

The question, as we have stated, for us to pass upon is whether the plaintiffs take an estate in fee simple or fee tail, which under the act of 1855 is converted into a fee simple, under the will of Robert A. Evans, or only a life estate. If the former, they are entitled to recover; but if they only take a life estate, the judgment must be for the defendant, for then they cannot convey an estate in the land in fee simple as they have agreed to do.

We are of the opinion that this case is governed by the rule in Shelley's case, which is as follows: " When the ancestor by any gift or conveyance takes an estate of freehold, and in the same gift or conveyance the estate is limited, either mediately or immediately, to his heirs in fee, or in tail, always in such cases ' the heirs' are words of limitation of the estate and not words of purchase." It is held in a number of cases that "heirs of the body" are also words of limitation and not words of purchase under this rule, and that the estate taken by the ancestor when these words are used is an estate in fee tail: Curtis v. Longstreth, 44 Pa. 297; Allen v. Henderson, 49 Pa. 333; Bassett v. Hawk, 118 Pa. 94; Reimer v. Reimer, 192 Pa. 571. The word "children" is ordinarily a word of purchase and not a word of limitation, yet when it is used to signify a whole line of decendants of the first taker as an equivalent of "heirs of the body," it creates an estate tail under the rule.

This has been decided in a number of quite recent cases.

In Pifer v. Locke, 205 Pa. 616, the testator devised a house

and lot to his daughter "For and during her natural life, and at her death, I devise and bequeath the same unto her children or issue in fee simple." Held, that she took a fee simple. In the opinion of the court, it is said, " We concede that generally the words 'child' and 'children' prima facie are words of purchase and not of limitation. See the many cases cited in Guthrie's Appeal, 37 Pa. 9. But if the remainder, even where these words are used, is to go to the general or lineal heirs as pointed out by law, they are synonymous with 'heirs of the body,' and by analogy to the rule in Shelley's case, the estate for life in the first taker is enlarged into a fee or into an estate tail by implication. Here the devise at the daughter's death is to her children or issue in fee simple, precisely as if he had said to my daughter and the heirs of her body, the very ones the law pointed out as the general or lineal heirs of the first taker." In Simpson v. Reed, 205 Pa. 53, the words of the will are: "I give to my daughter, Martha Bell Simpson, the equal, undivided one-fifth part or share of all my real estate for life only ; remainder after her death to her child or children in fee," etc. Held, that she took an estate in fee tail general, which the Act of April 27, 1855, P. L. 328, resolved into a fee simple. In the opinion Justice DEAN says : "Did the testator here use the words 'child' or 'children' in the sense of heirs of the body or issue? Prima facie they are words of purchase and not of limitation, and the devisee took but a life estate: Guthrie's Appeal, 37 Pa. 9, and the many cases therein cited; but is the remainder to go to the general or lineal heirs of the first taker as the law determines? Of course the estate of the first taker must be a freehold estate for life or for years ; it is then to go to her child or children in fee, the lineal heirs of the first taker whom the law identifies. 'Any form of words sufficient to show that the remainder is to go to those whom the law points out as the general or lineal heirs of the first taker will enlarge the estate in fee or estate tail by implication. . . .' A long list of those cases in which the words 'child' and 'children' have been held to be words of limitation by analogy to the rule in Shelley's case is given by AGNEW, J., in Yarnall's Appeal, 70 Pa. 335. . . . The word 'child,' since the daughter had no child at the time, was not a designatio personæ, but comprehended a class, and the daugh-

ter took an estate tail : Jones v. Davies, 4 Barn. & Adolph, 43."
In McKee v. McKinley, 33 Pa. 92, the words of the will were :
" To my daughter . . . . during her lifetime . . . . after her
death to her children, if any surviving, or issue of such children,
and in case of no children or issue of children, then to return
to my relatives or lawful heirs." In referring to this case in
Simpson v. Reed, 205 Pa. 53, Justice Dean says : " It was held
that the devise was to the daughter for life and then to her
children in fee, and in default of these to testator's heirs ; that
this was only another way of devising to the plaintiff for life,
with the remainder to her heirs, or to the plaintiff and her
heirs ; that the roundabout way the testator takes to say
' heirs ' does not affect the substance. It appears that at the date
of the will the daughter was single and did not contemplate
marriage. She having no children, and no particular ones be-
ing in the mind of the testator, for he could not know what
children or how many would be the issue, we think he intended
the ' issue ' to take in lineal descent. Therefore, the daughter
took an estate in fee tail general, which the statute of 1855
resolves into a fee simple."

With the law as laid down in these cases before us, it is not
a matter of much difficulty to construe the will under which
the plaintiffs have their title. A freehold estate is given to
them. A remainder of each undivided fourth of the estate is
given, on the death of each one of the four nieces, to " her
children and their heirs and assigns forever," without a be-
quest over in case of such niece's failure to have children.
Each share is to go to the lineal heirs, as pointed out by law,
on the death of each niece, and the word " children " is synony-
mous with " heirs of the body." The word " children " is not
a designatio personæ, as none of the nieces had any children
and all were unmarried at the time of testator's death. The
use of the words " children and their heirs and assigns for-
ever," therefore, was only another way of devising the undi-
vided part of the land to each niece and the heirs of her body,
and the roundabout way which the testator takes to say "heirs"
does not affect the substance. The estate which the plaintiffs,
and the deceased sister took under the will, according to the
rule in Shelley's case, is a title in fee tail general, which is re-
solved into a title in fee simple by the act of 1855. They are,

therefore, able to convey such title to the defendant as they agreed to convey, and entitled to recover the purchase money which the defendant agreed to pay. We, therefore, enter judgment for the plaintiffs for the sum of $4,000.

Judgment for the plaintiffs.

*Error assigned* was the judgment of the court.

*J. R. Kinzer*, for appellant.

*W. U. Hensel*, for appellees.

PER CURIAM, June 2, 1908:

The judgment is affirmed on the opinion of the learned judge of the common pleas.