# Federal Land Bank of Baltimore *v.* Walker, Appellant.

Argued April 22, 1942. Before SCHAFFER, C. J.;
MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*A. Grant Walker,* with him *Garrison, Fish, Gifford &
Chapin,* for appellant.

*Thomas W. Spofford,* of *Reed & Spofford,* with him
*Clarence A. Patterson* and *Florence L. Wheatley,* for
appellee.

OPINION BY MR. JUSTICE PARKER, May 25, 1942:

The controlling question raised by this appeal is
whether, by operation of the rule in Shelley's Case, Seth
Andrew Haskell took a fee simple in land devised to him
by his father. We are of the opinion that the rule is not
applicable and that Seth took only a life estate.[1]

---

[1] The devise became effective prior to the passage of the Act of
July 15, 1935, P. L. 1013 (20 PS §229), limiting the operation of the
rule in Shelley's case.

Fred Wano Haskell, being the owner of sixty-six acres of land in Erie County, made his last will and testament, dated November 18, 1922, and died August 22, 1924. The relevant portions of the will are as follows: "Fourth:—I hereby give and devise unto my son, Seth Andrew Haskell the entire use, occupancy and income from all of the North 66 Acres from the farm which I purchased from John Rabensdorf, situate in North East Township, County of Erie, State of Pennsylvania, subject, however, to the payment to my said wife, Ella V. Haskell of the annual sum of $200.00 during the term of her natural life, hereby constituting said annuity a lien upon said lands during her lifetime to secure payment of said annuity. Fifth:—Upon the death of my said son, Seth Andrew Haskell, I hereby direct that my farm of 66 Acres shall go and vest in the children of my said son, Seth Andrew Haskell, share and share alike. Should my said son, Seth Andrew Haskell leave no children or grandchildren then and in that case I direct that my said farm of 66 Acres shall go to and vest in his legal heirs."

The testator and his wife, Ella V. Haskell, were killed at the same time in an automobile accident on August 22, 1924, so that the charge in favor of Ella V. Haskell never became operative. When the will was executed and when the testator died Seth was married and had one child, Nancy Haskell, born October 4, 1921. On January 21, 1926, Seth and his wife, parents of Nancy, executed and delivered a mortgage in favor of the Federal Land Bank of Baltimore, the petitioner in this case. The mortgagors defaulted in their payments, the mortgage was foreclosed, and the Land Bank received a sheriff's deed for the premises.

Seth and his wife remained upon the farm until May 2, 1938, when he left home under circumstances which his daughter claims indicate that he committed suicide. The daughter, being the only child of Seth, has remained in possession of the premises. The Land Bank,

after delivery of the sheriff's deed, brought this proceeding under the Act of April 20, 1905, P. L. 239 (12 PS §2571, et seq.), to obtain possession of the land.

The lower court, after answer filed and arguments, held that by the terms of Fred's will and by application of the rule in Shelley's Case, Seth received an estate tail which ripened into a fee simple and that Seth had a right to mortgage his interest to the Land Bank, and directed that the prayer of the Land Bank be granted, that judgment be entered in favor of the Land Bank, and that writ of possession issue. Nancy Haskell by her guardian has appealed from the judgment entered.

It is well settled in this jurisdiction, as well as in other jurisdictions in the United States and in England, that the rule in Shelley's Case is not a rule of construction but is a positive rule of law which may defeat intent. As expressed by GIBSON, C. J., in *Hileman v. Bouslaugh*, 13 Pa. 344, 351: "It is admitted that the rule subverts a particular intention in, perhaps, every instance; for . . . it is proof against even an express declaration that the heirs shall take as purchasers." But here the testator did not use the precise words employed in the rule in Shelley's Case. He undertook to create a remainder not by use of the words "heirs" or "heirs of the body" but by employing the word "children". The prime question therefore prompts the further inquiry as to whether the words used here are judicially approved equivalents of the words "heirs" or "heirs of the body".

" 'Children' is prima facie a word of purchase": *Chambers v. Union Trust Co.*, 235 Pa. 610, 617, 84 A. 512. "Ordinarily, however, a devise to children, either directly or in remainder, gives them an estate as purchasers and, under such circumstances, the rule has no application": *Hesse's Estate*, 280 Pa. 581, 584, 124 A. 739. On the other hand, we have held in a number of cases that a testator may by his entire will disclose an intention to use "children" in the sense of "heirs" or

"heirs of the body" and have applied the rule in Shelley's Case.[2]

The real question presented here is whether the language of the item creating the remainder imports the same thought, according to the true and actual intent of the testator, as if a devise had been made to the "heirs" or the "heirs of the body" of the son. As expressed by Mr. Justice AGNEW, in *Yarnall's Appeal*, 70 Pa. 335, 340: "All the authorities agree that this rule [Shelley's Case] has no place in the interpretation of a will, and takes effect only when the interpretation has been first ascertained." The rule is not a medium for ascertaining the intention of the testator. If after considering the language of the will it is determined that the true intent of

---

[2](a) In the following cases "children" was construed as a word of purchase: *Gernet v. Lynn*, 31 Pa. 94; *Guthrie's Appeal*, 37 Pa. 9; *Cote and Wife v. VonBonnhorst*, 41 Pa. 243; *Huber's Appeal*, 80 Pa. 348; *Affolter v. May*, 115 Pa. 54, 8 A. 20; *Foster v. McKenna*, 11 A. 674; *Keim's Appeal*, 125 Pa. 480, 17 A. 463; *Oyster v. Knull*, 137 Pa. 448, 20 A. 624; *Hoover v. Strauss*, 215 Pa. 130, 64 A. 333; *Chambers v. Union Trust Co.*, 235 Pa. 610, 84 A. 512; *Stout v. Good*, 245 Pa. 383, 91 A. 613; *Hesse's Estate*, 280 Pa. 581, 124 A. 739.

(b) In the following cases "children" was construed as synonymous with "heirs" or "heirs of the body" and therefore a word of limitation: *Mason v. Ammon*, 117 Pa. 127, 11 A. 449, where the words used were "unto said sister . . . and at her death to her child, children, or other lineal descendants": *Shapley v. Diehl*, 203 Pa. 566, 53 A. 374, where the words used were to a son "for the term of his natural life, and at his death to his children or heirs"; *Pifer v. Locke*, 205 Pa. 616, 55 A. 790, where the words used were "unto my daughter Harriet . . . for and during her natural life, and at her death . . . unto her children or issue, in fee simple"; *Simpson v. Reed*, 205 Pa. 53, 54 A. 499; *Vilsack's Estate*, 207 Pa. 611, 57 A. 32; *Sechler v. Eshleman*, 222 Pa. 35, 70 A. 910; *Gilland v. Hallett*, 240 Pa. 268, 87 A. 303.

(c) In the following cases where the testator was held to be using "children" as synonymous with "heirs" or "heirs of the body", the word "descend" was thought sufficient to show such intention: *Haldeman v. Haldeman*, 40 Pa. 29; *Potts v. Kline*, 174 Pa. 513, 34 A. 191; *Brinton v. Martin*, 197 Pa. 615, 47 A. 841; *Lauer v. Hoffman*, 241 Pa. 315, 88 A. 496. Cf. *Lee v. Sanson*, 245 Pa. 392, 91 A. 611, and *Keim's Appeal*, supra.

the testator was to use the word "children" as synonymous with "heirs" or "heirs of the body", then the rule in Shelley's Case applies as a positive law; otherwise, it is not applicable.

Since the word "children" prima facie is not the equivalent of "heirs" or "heirs of the body" and primarily does not indicate heritable succession from the owner of the particular estate but individual acquisition, and since it "is not a word of limitation, but of personal description", the burden of establishing a different connotation is on the one who asserts a contrary intent: *Guthrie's Appeal*, 37 Pa. 9, 14. It is a difficult undertaking to convert the word "children" into a word of limitation: *Affolter v. May*, 115 Pa. 54, 58, 8 A. 20.

In language that is clear and without ambiguity the testator, after providing a life estate for his son, directed that the farm should "go and vest in the children of my [his] said son". If nothing more had been said it would not be open to argument that the rule in Shelley's Case had no application. The Land Bank's position is not improved by a further examination of the will. He provided that if his son left no children or grandchildren then the farm should "go to and vest in his legal heirs". The testator having given a fee simple to the children of his son after the expiration of the particular estate, such grant was not cut down by the subsequent provision in the will. In this respect we have the same situation as in *Curtis v. Longstreth*, 44 Pa. 297, 302, where the remainder was given to the children of the first taker, with the provision that if the life tenant should die without issue then the property should go to testator's heirs. It was there said: "Had there been no gift of a remainder to children, the limitation over on the death without issue, would have given him an estate tail by implication, but there having been an intermediate gift of a remainder to children of the devisee, of the particular estate, the gift over on the death without issue must be construed as a gift on death without *such issue* as

those previously mentioned, to wit, children." We held that the first taker took a life estate only and that it made no difference that the first taker was unmarried and without children when the will was made and when the testator died.

That case was followed by *Chambers v. Union Trust Co.,* supra (p. 617), where under a similar state of facts we said, quoting *Curtis v. Longstreth,* supra, and *Sheets' Estate,* 52 Pa. 257, 268: "It is an unbending rule that when a fee-simple . . . is given in remainder after an estate for life to the children of a first-taker, words following containing a limitation over on default of his issue are held not to raise an estate-tail by implication." Again it was held that the rule was not applicable.

The Land Bank relies largely on the case of *Lauer v. Hoffman,* 241 Pa. 315, 88 A. 496. There the portion of the devise where it was attempted to create a remainder was in these words: "After the death of my said daughter the said real estate shall *descend* to and become vested in the children of my said daughter, should she have any, in fee simple, and in default of such children, then such persons or persons as she may by her last will and testament direct." (Italics supplied.) It was held that the use of the word "descend" disclosed an intent to create a line of descent from the daughter. This is one of several cases set out in the footnote above disclosing a liberal extension of the rule in Shelley's Case and in which the cases were made to turn on the use of the word "descend". Those cases have no application for no such words were used in the will which we are construing and there is here no ground for concluding that the testator intended to make the children a new line of succession.

While it is true that the rule in Shelley's Case applies where the will discloses a clear intention to make the holder of the particular estate a new line of succession, that principle is of little aid in discovering the intention of the testator for it is merely a statement in enlargement of the definition.

The contrasting use of the word "children" in the gift to the testator's grandchildren and the subsequent use of "heirs" in case there are no children shows that the testator appreciated the difference in the legal import of the two words. The conclusion seems irresistible that the testator meant to describe a definite group who were to take title from testator and not from the first taker, the holder of the particular estate, and that Seth took a life estate only.

The court, having based its order on the conclusion that Seth held a title in fee simple, directed the writ of possession to issue without determining or having the fact determined by a jury as to whether Seth was dead or alive. In view of our conclusion, it will be necessary to re-examine the original petition and the request for a jury trial. The record must be returned for further action.

The order entered in the court below is reversed and the record is returned to that court for further action in harmony with this opinion, the costs of this appeal to be paid by the Federal Land Bank of Baltimore.