## Hough, Appellant, *v.* Farmers Bank and Trust Company of Lancaster County et al.

Argued May 25, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Charles L. Miller,* with him *Louis S. May,* for appellant.

*Morris Wolf,* with him *Fred Wolf, Jr., F. Lyman Windolph* and *Wolf, Block, Schorr & Solis-Cohen,* for appellees.

OPINION BY MR. CHIEF JUSTICE MAXEY, July 6, 1948:

This is a suit in equity by Sue Dickey Hough, appellant (hereinafter called "Mrs. Hough") to effect partition of No. 3 East King Street, Lancaster, Pa., and to secure an accounting of the rentals of that property for an indeterminate period.

The defendants are (1) Farmers Bank & Trust Company of Lancaster, Trustee of a mortgage on the property, as former mortgagee in possession of the property, (2) Commonwealth Title Company of Philadelphia, a former record owner of the property, (3) King & Square Corporation, a Pennsylvania corporation, the present record owner of the property, (4) Ward & Ward, a Pennsylvania corporation, tenant of the property under a thirty-year lease, and (5) Phoenix Mutual Life Insurance Company, which holds a $100,000 mortgage on the property.

Mrs. Hough claims that her mother, Mrs. Sue E. Dickey, in 1877 acquired only a life interest in one-fourth of the property under the will of Mrs. Dickey's father, John Metzger, Jr.; that when Mrs. Dickey died in 1924, Mrs. Hough as remainderman under Metzger's will became the owner of this one-fourth interest, and was entitled to partition the property and to receive an accounting of the rents from the time that the various defendants were in possession of the property.

Defendants' answer is that Mrs. Dickey (the mother) received in fee the one-fourth interest in the property, under Mr. Metzger's will, and that Mrs. Dickey and her husband deeded that fee to the defendants' predecessors in title in 1881, 64 years before this suit was begun, that the defendants and their predecessors in title have been in continuous possession of the property since that time, and that therefore Mrs. Hough has no interest in the property and no right to partition or an accounting. The case turns on whether the

rule in Shelley's Case [1] applies to a devise to a daughter for life, remainder to "her children, share and share alike or heirs at law." The court below held that it does apply.

---

[1] The rule in Shelley's Case is quoted in *Glenn v. Stewart*, 265 Pa. 208, 210, 108 A. 599.

"The rule takes its name from an early case decided in the reign of Queen Elizabeth (1 Coke 104), though it was at that time considered as an ancient dogma of the common law. . . . Blackstone has traced it to a case decided in the reign of Edward II. . . . At common law there are but two modes of acquiring title to real estate—by descent and purchase. Where a person takes as heir at law, he is in by descent; the law casts the estate on him at the death of his ancestor. But when he acquires title to land by his own act or agreement, he is a purchaser; not that in the common acceptation of the term he has paid a consideration for it, for if it is given to him, he is still, in contemplation of law, a purchaser. A devisee who takes an estate different from what the law would cast on him as heir is a purchaser, and as such is exempt from the restraints imposed on heirs in their minority, such as wardships and the right of marriage. These are remnants of the feudal system. It was natural, therefore, that under the system of military tenures, restraints should be imposed on devises of real estate and hence the adoption of the rule": 24 R.C.L. 889, section 2.

"The word 'limitation' as used in the rule in Shelley's Case must be understood, not in the sense of restriction, but as a word describing the extent or quality of the estate conveyed; and 'purchase' as any means of acquiring property other than by descent. With this understanding of the meaning of the terms 'limitation' and 'purchase', the rule announced in Shelley's Case would read, 'When the ancestor by any gift or conveyance takes an estate of freehold and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs in fee or in tail, that always in such cases "the heirs" are words describing the extent or quality of the estate conveyed, and not words designating the persons who are to take it.' ": 24 R.C.L. 892, section 4.

The Act of July 15, 1935, P. L. 1013, 20 PS 229, abolishes the rule in Shelley's Case as to grants or devises in trust, or otherwise, becoming effective *thereafter*. This Act of 1935 obviously has no application here for the grant in this case became effective long before that Act was passed.

The facts found by the court below (as condensed by us) are these: (1) John Metzger, Jr. died on January 21, 1877 seized of premises No. 3 East King St., Lancaster City. He was a widower and left to survive him four children, as follows: John K. Metzger, Addie L. Ermentrout, Sue E. Dickey (the mother of the plaintiff) and M. Kate Clark. (2) The codicil to the last will of John Metzger, Jr., dated July 22, 1875, disposed of his entire estate by dividing it into four equal shares. He gave one share to his son Jno. K. "in his own right"; one share to his daughter "Addie S. married to D. Ermentrout that is the interest to be paid to her during life and after her death to go to her children share and share alike"; one share to his daughter "Sue E. married to Theo. S. Dickey that is the interest thereof to be paid to her during life and after her death to be divided amongst her children, share and share alike or heirs at law"; one share to his daughter "M. K. married to F. G. Clark that is the interest thereof during life except the interest of $3000.—of her share or portion shall be paid annually to my granddaughter Nannie P. Walker and child of M. K." (4) On February 24, 1881 the four children named executed a deed, joined in by the spouses of the married children, which was duly recorded on September 28, 1881, conveying all the right, title and interest of the grantors in No. 3 East King Street, Lancaster City, to D. P. Locher and Charles H. Locher, partners trading as D. P. Locher and Son. (5) On January 24, 1889 Sue E. Dickey and her husband executed another deed, recorded on March 16, 1889, conveying her interest in said premises to Charles H. Frey in which it was set forth that the deed was executed and delivered "to remove all doubt to confirm the title in fee simple to the said Charles H. Frey, his heirs and assigns." (6) By various mesne conveyances the title acquired by D. P. Locher and Son is now vested in King & Square Corporation, one of the defendants. The defendants and their predecessors in title

have been in possession since February 24, 1881. (7) Sue E. Dickey died on April 9, 1924. She had four children, as follows: Elvira Elizabeth Dickey who was born November 10, 1875 and who died on April 9, 1920, unmarried and without issue; Maude Dickey who was born on March 4, 1877 and who died in infancy; Thaddeus Rodney Dickey who was born on May 2, 1879 and who also died in infancy; and Sue Dickey Hough, the plaintiff, who was born on November 22, 1882. The children of Sue E. Dickey were born after the date of the codicil. (8) Sue Dickey Hough, plaintiff, did not receive any income from the premises in question nor did she make any claim or assert that she had any interest in the premises until 1943.

The court below correctly stated the controlling question in this case is "whether the interest of Sue E. Dickey in the estate of her father, John Metzger, Jr., deceased, under his codicil was an absolute fee or only a life estate. If she took a fee simple under the rule in Shelley's Case it is evident that the plaintiff has no interest in the realty in controversy and consequently is not entitled to partition."

The court below properly based its decision on what it ascertained was the *intention* of the *testator in his use of the words "children or heirs at law"*, to mean heirs of the grantee of the life estate. That is, they were words of limitation and not of purchase and were so intended by the testator. Having come to this conclusion "the legal consequence" necessarily followed and the rule in Shelley's Case had to be applied.

The facts in *Shapley v. Diehl,* 203 Pa. 566, 53 A. 374, are so closely analogous to the facts in the present case that we think, as did the court below, that it rules this case. There the grant was "to Joseph S. Shapley for the term of his natural life, and at his death to his children or heirs." Justice MITCHELL in his opinion for this Court said: "Prima facie, the word 'children' is a word of purchase and not of limitation, and must

be so construed unless it is clear that the grantor used it in the other sense. . . . If . . . he . [grantor] had omitted the word 'heirs' and said 'children' only, the clear presumption would have been, with nothing to rebut it, of intent to give to them directly as purchasers. But if that was his actual intent, why did he add the words 'or heirs' especially in view of the fact that there were no children then in existence but only one child, naturally suggesting the very common form of expression 'child or children.' The most evident explanation would seem to be that he had the word 'children' in his mind not as descriptio personarum but as representing the next in the line of inheritance, and then the thought ocurring to him that there might not be any children he added, 'or heirs' to complete the expression of his intent." Justice MITCHELL said further, citing *Haldeman v. Haldeman*, 40 Pa. 29, 36: "The testator 'has defined the sense in which he had used the words child and children, and shows an intent to express heritable succession. . . .' The phrase in the present case is 'children or heirs' and that means heirs of the grantee of the life estate, the word heirs being used as a synonym to enlarge and explain the preceding word which might otherwise fail of its real intendment." We held that case was one for the application of the rule in Shelley's Case, and under it the appellant took a fee. In the instant case likewise, the devisor used the phrase "heirs at law" as "a synonym to enlarge and explain the preceding word" "her children". In the *Shapley* case there was only one child of the grantee at the time the grant was made. In the instant case there were no children of the devisee at the time the will was made. Mrs. Dicky's oldest child, Elvira, was born three months and nineteen days after the codicil was executed.

See also *Mason v. Ammon*, 117 Pa. 127, 11 A. 499, 451; *Pifer v. Locke*, 205 Pa. 616, 55 A. 790; *Simpson v. Reed*, 205 Pa. 53, 54 A. 449; *In re Vilsack's Estate*, 207 Pa. 611, 57 A. 32; *Sechler v. Eshleman*, 222 Pa. 35, 70

A. 910; *Gilland v. Hallett*, 240 Pa. 268, 87 A. 303. In the foregoing cases " 'children' was construed as synonymous with 'heirs' or 'heirs of the body' and therefore a word of limitation": *Federal Land Bank of Baltimore v. Walker*, 345 Pa. 185, 26 A. 2d 436, footnote p. 438.

*Guthrie's Appeal*, 37 Pa. 9, upon which appellant relies, is clearly distinguishable from this case. There the gift was to the life tenant with a remainder to "such of her children or their heirs as may survive her, as tenants in common; that is, the child or children of any deceased child of hers shall hold the same interest and right that the deceased parent would have held if living." In that case this Court said: "There is, therefore, no presumption that the remaindermen were intended to take as heirs, arising from the use of technical words of limitation. There is, indeed, a contrary presumption. The word children is not a word of limitation, but of personal description."

In the instant case the gift was to the children "or heirs at law" of the life tenant. At the time the gift was made the life tenant had no children but even if she had, it would be obvious that the testator used the word "children" not as a personal description but as representing the next in the line of inheritance. Manifestly, he used the word "children" as synonymous with the words "heirs at law". They are, therefore, words of limitation. The rule in Shelley's Case applies.

The decree is affirmed at appellant's cost.