# MARY MASON ET AL. v. D. R. AMMON ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF UNION COUNTY.

Argued May 5, 1887—Decided October 3, 1887.

1. Whether one claiming title by adverse occupancy had that kind of continuous, notorious, and hostile possession of the land in dispute as would give title under the statute of limitations, is a question of fact for the jury.

2. A simple receipt not under seal " for forty dollars for my share of the

Statement of Facts.

lot" in dispute is not sufficient to divest the interest of the alleged vendor under the statute of frauds.

3. In a devise "unto said sister and at her death to her child. children or other lineal descendants:" Held, that the words, "other lineal descendants," so qualify the previous words, "child, children," as to make them words of limitation, and not of purchase, and the estate of the first taker is an estate tail, at once affected by the operation of the statute of limitations.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.; PAXSON, J., absent.

No. 235 January Term 1887, Sup. Ct.; court below, No. 54 March Term 1885, C. P.

This was a summons in ejectment served on February 28, 1885, in an action by Mary Mason, Elizabeth J. Mason and Martha Mason, heirs and devisees of John Ditty, deceased, against Daniel R. Ammon and Mrs. Mary Murty, to recover a lot of ground on South Second street in the borough of Lewisburgh. On May 19, 1885, Wm. H. Marr was added as a defendant. The plea was not guilty.

On the trial,.March 9, 1886, the plaintiffs showed title in John A. Reed and deed from John'A. Reed to George F. Miller, dated December 9, 1834, and deed from George F. Miller to John Ditty and Ralph Ditty, dated May 11, 1835. Then, having proved the attestation and that John and Ralph Ditty, as well as the attesting witness were dead, they offered in evidence the following paper:

Received, Lewisburgh, March 3, 1838, of John Ditty, forty dollars for my share of the lot situated on South Second street.

|  |  |
|---|---|
|  | his |
| Witness present. | Ralph X Ditty |
| A. Graham. | mark |

The admission of this paper was objected to, as being too indefinite and without seal, but the objection was overruled and offer admitted. It was then shown that early in 1838 John Ditty removed a house from across the street upon this lot; he was a single man and died unmarried July 2, 1838, leaving his brother Ralph and a sister Martha Mason, wife of Henry Mason, with whom he had made his home. Martha

Mason died August 27, 1871, leaving four children, Robert, who died without issue, Martha, Mary and Elizabeth J., the plaintiffs. Henry Mason died July 7, 1874. Ralph Ditty died about 1865. The plaintiffs then put in evidence the will of John Ditty, dated September 4, 1837, admitted to probate January 22, 1880, which was as follows:

I John Ditty of the Borough of Lewisburg county of Union and State of Pennsylvania being of sound mind do hereby bequeath unto my sister Martha, wife of Henry Mason, during the term of her natural life, and at her death I bequeath it to the child or children of said sister Martha, my farm in Elk Township Venango County Pennsylvania. Said farm contains one hundred and three acres and one hundred and thirty-one perches (103 A 131 per). The deed of said farm is recorded in Franklin Venango Pennsylvania. Said farm was bought from Shippen Tract number 2741.

Said farm adjoins the lands of John Ewing and Henry Shippen. I also bequeath unto said sister and at her death to her child children or other lineal descendants any money and any other property whether real or personal which I possess at my death wheresoever situate. I bequeath unto my brother Ralph Ditty twenty-five dollars. I also bequeath unto my brother William Ditty twenty-five dollars. There is to be no dispute with my sisters child or children about my farm for it is to be theirs at their mother's death. I do not give said sister Martha any legal right to sell said farm, for it is the childs or childrens at her death. I nominate Dr. William H. Ludwig and Alexander Graham executors of my will.

In the defendants' case in chief, John V. Miller, commissioners' clerk, being on the stand:

Defendants' counsel offer to prove that the premises in controversy were assessed to Ralph Ditty, as the owner, from the year 1838, until 1865 or 1866, the date of his death. To be followed with proof that he was in possession, of the premises, adverse and hostile, from 1838 to the time of his death. The assessment of taxes offered as some evidence to show that he was in possession of the property at the time of their levy and assessment.

Plaintiffs' counsel objected: 1. Because the offer is to show the assessment of an acre of ground, and the description of the property assessed does not correspond with the description of the property in this suit. 2. That it is not evidence for the purpose of showing title in the defendant in this suit. 3. That the defendant, being the brother of John Ditty, the decedent, and it already appearing that they were tenants in common in the year 1838, of the land described in this suit, that Ralph Ditty cannot claim by adverse possession by virtue of that fact; and the testimony is irrelevant and immaterial to the issue trying.

Witness: All this land was assessed as lots.

By the court: Whether the defendant can defeat the title, given in evidence by the plaintiff, by adverse user, depends upon the construction to be given to the will of John Ditty, given in evidence by the plaintiff, and we admit the evidence for the present in order to show an adverse possession. To which the defendant excepts and bill sealed.[1]

Evidence then followed sustaining the offer.

Defendants' counsel then offer record in equity, William H. Marr and others v. Samuel H. Ziegler, administrator, etc., and others, No. 1 of May term 1880. This offered for the purpose of reading the testimony of the witnesses, except William Moore, which was perpetuated by the bill filed in that case, and who are now dead; and for the purpose of showing, among other things, that John Ditty, under whom plaintiffs claim, and Ralph Ditty owned in partnership, as the witness states it, a number of lots in this town; that in 1838, I believe before John Ditty went to the west, there was a parol agreement executed between the parties by which John Ditty took a certain portion of the property and Ralph Ditty took the premises in dispute, and the agreement was executed and Ralph Ditty remained in possession of the lot assigned to him until his death, as the exclusive owner of the property.

Plaintiffs' counsel objected: . . . . .

By the court: On inspection of the evidence, relied upon to establish the offer, in our opinion it falls short of what is necessary to constitute authority on an exchange of lots and parol partition, and we therefore reject the evidence.

Defendants' counsel then offered the testimony for the pur-

pose of showing that Ralph Ditty, more than 21 years before the impetration of the writ, took adverse possession and hostile possession of the premises in dispute.

Plaintiffs' counsel object because the limitation cannot run against the plaintiffs in this suit until their right to possession accrued.

By the court: Whether the objection to the testimony is good or not, as we have had occasion to say before, depends upon the construction to be given to the will relied upon by plaintiffs, under which the plaintiffs claim. The evidence of William Ditty, I believe, does show an adverse possession, and for that reason we admit the evidence for the present. To which the plaintiffs except and bill sealed. [2]

Under this offer the testimony of William Ditty was read. The defendants then offered evidence to show that said will was a forgery, which was excluded on the ground that the probate of the will was more than five years before, and therefore conclusive. Other evidence was introduced to show adverse possession by Ralph Ditty, by tenants who paid him rent, until his death in 1865, when on Sept. 20, 1867, it was sold by his administrator under order of the Orphans' Court to Wm. H. Marr, from whom title afterwards passed to Daniel R. Ammon and Mary Murty, defendants.

The court, J. C. BUCHER, P. J., charged the jury:

The plaintiffs allege that the title to this property, as well as the right of possession, is in them and not in the defendants. It is an inherent principle in the law of ejectment, that the plaintiff must always recover, if he recovers at all, upon the strength of his own title and not upon the weakness of his adversary. The contention of the plaintiffs is that they have established this. They allege that one John A. Reed was the owner of this land, and that by his deed dated the 9th day of December, 1834, he conveyed it to George F. Miller, as his assignee, for the benefit of creditors. This deed was given in evidence, and this then was followed up by the deed of George F. Miller, the assignee of Reed, dated May 11, 1835, by which he conveyed the property in dispute to Ralph Ditty and John Ditty as tenants in common; that is to say, he conveyed the undivided half of the lot in dispute to each of these parties,

thus giving them the whole as the tenants in common. Then the plaintiff followed this with evidence of a receipt dated March 3, 1838, drawn by Ralph Ditty and attested by Alexander Graham, in which he receipted to John Ditty for his share of the purchase money for a lot on South Second street. Thus the plaintiffs contend that the entire title to the property in dispute became vested in John Ditty by reason of his purchase of the share of Ralph. This then was followed by the will of John Ditty dated the 4th day of September, 1837, and probated on the 22d of January, 1880. The plaintiffs also gave evidence that they were the children of Martha Mason, who is one of the devisees mentioned in the will of John Ditty.

The contention on the part of plaintiffs is that under this will of John Ditty a life estate was vested in Martha Mason, the mother of these plaintiffs, with the remainder over in fee to them at her death, and for that reason they claim that they are entitled to recover in this action. There was evidence given that John Ditty entered into the possession of this land in the spring of 1838, by rolling a house over on to it from an adjacent lot, which he occupied. Thus, you see, he died seized of the property, because the evidence is undeniable that he died in July, 1838, after this house was erected and whilst he was in possession; so he died seized of the land, and this took the title out of the commonwealth and vested it in John Ditty, and the title of the plaintiffs to the property in dispute turns upon the construction to be given to the will of John Ditty.

The language of this will, under which the plaintiffs claim to recover, is: " I also bequeath unto said sister (Martha, wife of Henry Mason), and at her death to her child, children, or other lineal descendants, any money and any other property, whether real or personal, which I possess at my death, wheresoever situated." In Wilde's Case, 6 Co. 17, cited in Ellet v. Paxson, 2 W. & S. 434, the devise was "to Wilde and his wife, and after their decease to his children;" held but a life estate in Wilde and his wife, with remainder to their children. The rule is, that child and children are never words of limitation, " but of purchase indicating a new stock, and are properly descriptive of a particular class or generation of issue.

They point not at heritable succession but individual acquisition:" Hayes, page 35, cited in Guthrie's Appeal, 37 Pa. 14; Bussar v. Bradford, 2 Atk. 222; Gernet v. Lynn, 31 Pa. 94; Chew's Appeal, 37 Pa. 23. It is admitted that, whilst child or children, will not, per se, be construed to be words of limitation, yet, when coupled with some other expression of testator, showing that they were used as a nomen collectivum, signifying "heirs of the body," the rule in Shelley's case has been applied. In the present case, John Ditty devises to his sister Martha, "and at her death to her child, children, or other lineal descendants," showing that the testator used child or children in the sense of heirs of her body, for lineal descendants could be none other than the issue of her body, indicating indefinite issue, and the estate would, under the expression lineal descendants, have gone to grandchildren and great-grandchildren, thus defining the nature of the estate intended to be given to the successors of Martha, as one which he meant they should take by descent from her. In Allen v. Markle, 36 Pa. 117, the testator gave to his son A. for life, and at his decease to descend to his legitimate offspring forever, but in case A.'s issue should become extinct, then over to other devisees in fee: held an estate tail, and that the word "offspring," even if not defined by the subsequent use of the word "issue," is a term of limitation. It is difficult to see why the term "lineal descendant" is not still more decisive of the intention of the testator to create an inheritable estate in his sister Martha; and as Mr. Hayes says that the word "children" may be construed to mean heirs of the body, when there is an express warrant for this change of its legitimate meaning, under the hand of the author of the gift, we have here the use by the testator of the very definition itself of "heirs of the body," to wit, "lineal descendants," and that too used in the same connection with child. No stronger case could exist, showing the use of child and children in the sense of heirs of the body. Admitting the difficulty as well as the rarity of the cases where this construction has been given to child or children, yet if in any case the construction is admissible, it appears to us it is so in the present case, although this conclusion is reached with some hesitation. This conclusion is fortified and strengthened by the language of the will in

devising the Venango farm. The language of the will as to that farm is : " I hereby bequeath unto my sister Martha, during the term of her natural life, and at her death I bequeath it to the child or children of said Martha." Then comes the devise which we have just been considering. After that the testator returns to the Venango farm devised to Martha, and declares, "there is to be no dispute with my sister's child or children about my farm, for it is to be theirs at their mother's death. I do not give said sister Martha any legal right to sell said farm, for it is the child's or children's at her death." This shows that the testator intended a different tenure of title in the Venango farm, and as to that Martha should have but a life estate. He throws no such guard around the devise of the house and lot in dispute, showing no solicitude about the child or children getting it. [We charge you that Martha Mason's estate in the lot in controversy is an estate tail, and not an estate for life with remainder over in fee to the plaintiffs, who are her children, as is contended for by the learned counsel for the plaintiffs.] [3]

The result is that Martha Mason, the mother of these plaintiffs, had an estate tail in this, and if she had gone into possession of it after the death of John Ditty and held it, there might be a ground for the plaintiffs to sustain this action. But the proof is undeniable on the part of the defendants, if you believe it, that shortly after the making of this will, and after the death of John Ditty in 1838, Ralph Ditty went into the possession of this real estate by himself or by his tenants, claiming it adversely as his own. The assessments of the lot have been given in evidence to him for a long number of years ; and William Ditty, a brother, testifies to an exchange or a partition of the land. You will remember his deposition. We excluded that for the purpose of showing title in Ralph Ditty by virtue of this alleged exchange of land, but admitted the evidence for the purpose of showing that Ralph Ditty was claiming this land adversely ; and the evidence of William Ditty is, if you believe it, and it don't appear to be contradicted by anybody, that Ralph Ditty held the uninterrupted possession of this land, claiming it as his own, by himself and his tenants down until his death, in 1865 or 1866. There is also the evidence of witnesses. You will remember them. George

Chappel, John Balliet, and others, testify to this adverse possession. Mrs. Miller testified that 'way back in 1845, or along there, her husband leased this property of Ralph Ditty and paid the rent, but apart from all this there is no evidence in the case whatever, nor is it pretended, as I understand the contention of the plaintiffs, that Martha Mason or any of her heirs ever had any actual possession of this land, either by themselves or their tenants. It don't appear that they ever exercised any act of ownership over it. Then it is in evidence that Martha Mason died in 1871. That is the time of her death as fixed by the testimony of Mr. Ziegler, a witness for the plaintiffs. This action of ejectment was not brought until 1885, a period of upwards of forty-six years after the estate passed out of John Ditty by his last will and testament, and it has been held adversely ever since. Now it is true that Martha Mason at that time was a married woman and was under disability to sue; yet it did not prevent the running of the statute of limitations, because our act of assembly of the 22d of April, 1856, followed by the decision of Hunt v. Wall, 75 Pa. 413, expressly declares that if parties be under disability at the time when their title accrues to real estate, that they are forever barred, unless a suit be brought within thirty years from the time that the right of entry first became vested in them.

It was distinctly held in Baldridge v. McFarland, 26 Pa. 338, that an adverse possession of twenty-one years, during the life of the tenant in tail, will bar a recovery by the issue in tail. The uncontradicted evidence in the case is, that adverse possession of the land was taken by those under whom the defendants claim 'way back in 1838, upon the death of William Ditty, the testator, and maintained up to this time. [No action was brought for more than thirty years, and therefore we instruct you that plaintiffs cannot recover.] [4]

The plaintiffs ask us to say:

That, under the law and the evidence in this case, the will of John Ditty is conclusive; and if the jury believe that John Ditty, the testator, was, at the time of his death, the sole owner of the lands described in the writ, and that the plaintiffs are the devisees mentioned in the will as the children of Martha Mason, the sister of testator; and that Martha Mason died

within twenty-one years of the commencement of this action, then the plaintiffs are entitled to recover the premises described in the writ, with damages and costs.   And if John Ditty and Ralph Ditty were tenants in common at the time of testator's death, then plaintiffs are entitled to recover the undivided half of the premises, together with damages and costs.

Answer : Refused.[6]

The defendants ask us to say :

1. That, under the will of John Ditty, offered by plaintiffs, Mrs. Mason took, if anything, an estate in fee tail in the lands in suit, and the plaintiffs must claim through her as the heirs of her body and tenants in tail and not in remainder, after the termination of a life estate in the said Mrs. Mason.

Answer : The law is as stated in this point.[5]

2. That the statute of limitations began to run against these plaintiffs at the death of John Ditty, in July, 1838, and under the act of assembly in such case made and provided, and especially under the act of 13th April, 1859, P. L. 603, the plaintiffs cannot recover.

Answer : Affirmed.[5]

3. That, under all the evidence in the case, plaintiffs cannot recover.

Answer : Affirmed.[5]

The verdict of the jury was for the defendants, and judgment.   The plaintiffs then took this writ, assigning for error :

1. The overruling of plaintiffs' objections to offer.[1]

2. The overruling of plaintiffs' objections to offer.[2]

3. The part of the charge embraced in [ ][3]

4. The part of the charge embraced in .[ ][4]

5. The affirming of defendants' points.[5]

6. The refusal of the plaintiffs' point.[6]


*Mr. Samuel H. Orwig*, for the plaintiffs in error :

1. The words in the will, " child, children," are words of purchase, and not words of limitation.   The superadded words, " or other lineal descendants," being in the alternative and embracing a class, do not indicate that the testator intended to entail his estate.   They are not apt words to create an estate-tail.   But if, by the words used in the will, the testator intended an estate for life in his sister Martha,

and the remainder in fee to her child or children, and if, by lineal descendants, he intended the heirs of Martha's children, then the words he employed would clearly effect his purpose. The children take by gift, or purchase, from the testator, and not by descent from their mother: 1 Shars. & B. L. C. 201; Nebinger v. Upp, 13 S. & R. 71; Dunwoodie v. Reed, 3 S. & R. 439; Guthrie's App., 37 Pa. 21.

2. The title vested in the children as tenants in common, at the death of the testator. Their right of possession alone was postponed until the death of the life-tenant. And no statute of limitation could run against them until their right of possession accrued, which was August 27, 1871, the date of Martha Mason's death: Hall v. Vendegrift, 3 Binn. 374; Shepley v. Lytle, 6 W. 500; Poe v. Foster, 4 W. & S. 355; Marple v. Myers, 12 Pa. 125.

3. Ralph Ditty never occupied the premises in dispute in person. The presumption of law is that he collected rents for the owner. The court should have submitted the question of adverse possession to the jury: Jones v. Wildes, 8 S. & R. 150.

*Mr. Andrew H. Dill* (with him *Messrs. E. M. Beale, Charles S. Wolfe, Andrew A. Leiser*), for the defendants in error:

1. The fifth and sixth assignments of error violate Rule XXII., which is enforced, Wertz's App., 69 Pa. 175, and is a waiver of errors alleged.

2. Official assessments are admissible as an official ascertainment of actual occupants and owners: Sailor v. Hertzog, 10 Pa. 317.

3. The first branch of the devise in question to "said sister," by implication for life, is a limitation of a freehold to her; and the second branch, "to her child children or other lineal descendants," is, in legal meaning, to her issue in its technical sense as a word of limitation of the inheritance by way of remainder to the heirs of her body. The words quoted must be construed together as describing the lineal descendants of Martha Mason, and the gift is an estate-tail: Guthrie's App., 37 Pa. 10; Braden v. Cannon, 1 Gr. 60; Haldeman v. Haldeman, 40 Pa. 35; Lehman's Est., 3 Phila. 104; Dodson v. Ball, 60 Pa. 492; Huber's App., 80 Pa. 356; Ogden's App.,

70 Pa. 501; Yarnall's App., 70 Pa. 340; Williams' App., 83 Pa. 391; Carrol v. Burns, 108 Pa. 386.

4. As to the statute of limitations. When the plaintiff had closed his case he had shown that the title of Martha Mason was acquired in 1838, and that nothing whatever had been done in asserting it until the ejectment was brought in 1885. More than thirty years had expired and the bar of the statute was complete: Baldridge v. McFarland, 26 Pa. 338.

OPINION, MR. CHIEF JUSTICE GORDON:

None of the assignments of error in this case can be sustained except that which covers the answer to the defendant's third point; which point and answer are as follows: "That under the evidence in this case the plaintiffs cannot recover." Answer, "Affirmed." Whether Ralph Ditty, and those claiming under him, had that kind of continuous, notorious and hostile possession of the premises in dispute as would give them title under the statute of limitations, was, under all the evidence, a question for the jury, and ought so to have been submitted. Originally John and Ralph Ditty were tenants in common of the lot in controversy, and the receipt of March 3, 1838, was not of itself sufficient, under the statute of frauds and perjuries, to divest Ralph's interest; hence, prima facie, his subsequent possession would have to be regarded as a joint possession for himself and his brother. The receipt, however, taken in connection with the other parol evidence, does, undoubtedly, not only tend to rebut the prima facie presumption of Ralph's occupancy as a tenant in common, but presents a strong case of adverse possession. Still, strong as the evidence is, it ought to have been submitted to the jury. As to the construction of the will: The learned president of the Common Pleas has so well disposed of that branch of the case, that we need only say, we entirely agree with him. The words "other lineal descendants," so qualify the previous words "child or children," as to make them words of limitation, and not of purchase. Indeed, the whole case was so well tried, and the result reached so obviously just, that except to preserve intact a necessary and important legal rule, we would hesitate to send it back for re-trial.

The judgment is reversed, and a new venire ordered.