## Shapley, Appellant, *v.* Diehl.

*Deed—Rule in Shelley's Case—Children—Heirs.*

In determining whether the rule in Shelley's Case is applicable, the test is how the donees in remainder are to take. If as purchasers under the donor then the particular estate is limited by the literal words of the deed and the rule in Shelley's Case has no application. But if the remaindermen are to take as heirs to the donee of the particular estate, then the superior intent as declared in Shelley's Case operates and the first donee takes a fee, whatever words may be used in describing the estate given to him.

A grant to a son "for the term of his natural life and at his death to his children or heirs," vests in the son a fee under the rule in Shelley's Case.

The rule in Shelley's Case is a rule of law, not a rule of construction and where a case falls within it, it applies inexorably without reference to intent.

Argued April 29, 1902. Appeal, No. 136, Jan. T., 1902, by plaintiff from judgment of C. P. Cumberland Co., on case stated in suit of Joseph S. Shapley *v.* I. C. Diehl, John L. Martin and William Hykes, Trustees of the Church of God of Shippensburg. Before McCollum, C. J., Mitchell, Dean, Fell and Potter, JJ. Reversed.

Case stated to determine the marketable title to real estate. Before E. W. Biddle, P. J.

From the case stated it appeared that Joel Shapley, the plaintiff's father, wrote on the back of a deed which conveyed to him the real estate in controversy, the following words:

"For value received, I hereby convey and transfer all my right, title and interest to the property within mentioned, to Joseph S. Shapley for the term of his natural life and at his death to his children or heirs."

Subsequently Joel Shapley executed and delivered to Joseph S. Shapley a paper, as follows:

"Whereas, by certain conveyances dated December 15, 1896, . . . . it was my intention and desire to convey the property therein mentioned to Joseph S. Shapley, his heirs and assigns; and whereas the words used in said conveyance do not seem to clearly effectuate such intention, therefore, for the purpose of removing all doubt as to the nature of the estate intended

to be passed, and for the purpose of carrying such intention into effect, I hereby declare such to have been my intention and desire the same to go on record as such."

The plaintiff contracted to sell the property to the defendants.

The defendants objected to plaintiff's title on the ground that he had a life estate only. The court held that the rule in Shelley's Case did not apply, and that plaintiff had merely a life estate, and accordingly entered judgment for the defendants on the case stated.

*Error assigned* was in entering judgment for defendants.

*J. M. Weakley,* with him *Joseph S. Shapley,* for appellant.— Plaintiff took a fee: Sheely v. Neidhammer, 182 Pa. 163; Guthrie's App., 37 Pa. 12; McKee v. McKinley, 33 Pa. 93; Dodson v. Ball, 60 Pa. 500; Potts's Appeal, 30 Pa. 170; Yarnall's Appeal, 70 Pa. 341; Carson v. Fuhs, 131 Pa. 260; Dodson v. Ball, 60 Pa. 500.

*J. S. Omwake,* for appellee.—In the deed in question the word " heirs " means " children: " Guthrie's App., 37 Pa. 9; Chew's App., 37 Pa. 23; Huss v. Stephens, 51 Pa. 282; Warn v. Brown, 102 Pa. 347; Criswell v. Grumbling, 107 Pa. 408.

OPINION BY MR. JUSTICE MITCHELL, October 13, 1902:

In determining whether the rule in Shelley's case is applicable the test is how the donees in remainder are to take. If as purchasers under the donor then the particular estate is limited by the literal words of the deed and the rule in Shelley's case has no application. But if the remainder-men are to take as heirs to the donee of the particular estate, then what has been called the superior intent as declared in Shelley's case operates and the first donee takes a fee, whatever words may be used in describing the estate given to him. " The inheritance in remainder must be given to the heirs of the grantee of the estate for life, as heirs, or the rule has no applicability to the case. . . . . It is always therefore, a precedent question in any case to which it is supposed the rule is applicable whether the limi-

tation of the remainder is made to the heirs in fee or in tail as such, and in solving this question the rule itself renders no assistance. It is silent until the intention of the grantor is ascertained : " Guthrie's Appeal, 37 Pa. 9.

In construing the deed here we must of course be governed entirely by the language of the instrument itself. If by it a life estate only passed to appellant with a remainder in fee to his son, the latter cannot be divested in this proceeding by any subsequent declaration of the grantor however formal.

The words of the grant are "to Joseph S. Shapley for the term of his natural life, and at his death to his children or heirs." Prima facie, the word "children" is a word of purchase and not of limitation, and must be so construed unless it is clear that the grantor used it in the other sense. That it may be so used has been held in many cases which it would be tedious and unprofitable to review here in detail. A number of them are referred to in Yarnall's Appeal, 70 Pa. 335, 341. The question for us is the sense in which the words were used in this instrument, that is, what was the intent of the grantor in the phrase "children or heirs ? " If he had omitted the word "children" and said "heirs" only, the precise case for the rule would have been presented and the life estate would have been enlarged to a fee, yet the meaning would have been exactly the same and the children would have come in as first in the line of inheritance. If on the other hand he had omitted the word "heirs" and said "children" only, the clear presumption would have been, with nothing to rebut it, of intent to give to them directly as purchasers. But if that was his actual intent, why did he add the words "or heirs" especially in view of the fact that there were no children then in existence but only one child, naturally suggesting the very common form of expression "child or children." The most evident explanation would seem to be that he had the word "children" in his mind not as descriptio personarum but as representing the next in the line of inheritance, and then the thought occurring to him that there might not be any children he added, "or heirs" to complete the expression of his intent. The illustrative case put by STRONG, J., in Haldeman v. Haldeman, 40 Pa. 29, 36, seems exactly in point. The testator "has defined the sense in which he had used the words child and children, and shows an intent

to express heritable succession.  For if in this will, the word issue means child or children instead of those words meaning issue in the sense of heirs of the body, the devise must lapse on the death of any of the daughters without leaving a child though she should leave a grandchild.  This was clearly not the testator's intention."  The phrase in the present case is "children or heirs" and that means heirs of the grantee of the life estate, the word heirs being used as a synonym to enlarge and explain the preceding word which might otherwise fail of its real intendment.  The words, therefore, naturally and properly seem to express the intent that the donees in remainder should take not from the donor directly as purchasers, but in succession by inheritance from the grantee of the life estate.  The case, therefore, is one for the application of the rule in Shelley's case, and under it the appellant took a fee.

It is argued that this construction defeats the plainly expressed intent that the first grantee should take only a life estate.  But the rule in Shelley's case is a rule of law, not of construction and where a case falls within it, it applies inexorably without reference to intent.  "It is admitted that the rule subverts a particular intention in perhaps every instance ; for as was said in Roe v. Bedford, 4 Maule & Selwyn 363, it is proof against even an express declaration that the heirs shall take as purchasers.  But it is an intention which the law cannot indulge consistently with the testator's general plan, and which is necessarily subordinate to it.  It is an intention to create an inalienable estate tail in the first donee, and to invert the rule of interpretation by making the general intention subservient to the particular one.  A donor is no more competent to make tenancy for life a source of inheritable succession, than he is competent to create a perpetuity, or a new canon of descent."  GIBSON, C. J., in Hileman v. Bouslaugh, 13 Pa. 344.  "The rule in Shelley's Case is never a means of discovering the intention.  It is applicable only after that has been discovered.  It is then an unbending rule of law. . . . It is not competent for the testator to prevent this legal consequence by any declaration, no matter how plain, of a contrary intention. . . . No one can create what is in the intendment of the law an estate in fee, and deprive the tenant of those essential rights and privileges which the law annexes to it.  He cannot make a new estate

unknown to the law: " SHARSWOOD, J., Doebler's Appeal, 64 Pa. 9, 17.

Judgment reversed and judgment directed to be entered for the plaintiff according to the stipulation of the case stated.