In the Matter of Proving the Last Will and Testament of CATHERINE A. TONE, Deceased, as a Will of Real and Personal Property.

ABRAHAM GREENBERG, Special Guardian for MARY FREDERICA TONE, an Infant, Appellant; JOSEPH H. McMAHON, Respondent.

First Department, February 7, 1919.

Will — probate — when fact that witness did not hear attestation clause read is immaterial — when word " child " or " children " given ordinary meaning — Decedent Estate Law, section 17, construed — when devise of more than half of estate to religious corporation valid.

The fact that a witness to a will did not hear the attestation clause read is immaterial where she testifies to the necessary facts, that the testatrix told her, in the presence of the other witness, that the instrument was her

will, and signed her name thereto in their presence and they each thereupon, in the presence of each other, signed the will as witnesses.

The words " having a husband, wife, child or parent," as used in section 17 of the Decedent Estate Law, which prevents a person, under certain circumstances, from devising more than one-half of his estate to benevolent, etc., corporations, speak not as of the time of the making of the will but of the time of the death of the testator, and are equivalent to " shall die leaving a husband, wife, child or parent surviving him."

Where it appears from the entire will that it was the intention of the testator, or where a different construction would give rise to partial intestacy, or where in a statute, either from the statute itself or the purpose of its enactment, or from the provisions of other cognate statutes, the intention of the Legislature is manifest, the word " child " or " children " will be given the comprehensive meaning of issue or descendants. But where there is no such intent, either of testator or Legislature, thus disclosed, the words " child " or " children " are to be given their primary and ordinary meaning of " the immediate descendants in the first degree of the person named as the ancestor."

Where a testator dies leaving him surviving neither wife, child nor parent, a devise of more than half of his estate to the corporations or any of them enumerated in section 17 of the Decedent Estate Law is valid, although the testator may be survived by descendants in a remoter degree than a child, for example grandchildren.

SMITH, J., dissented, with memorandum.

APPEAL by Abraham Greenberg, as special guardian, from a decree of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 20th day of June, 1918, admitting to probate the will of the above-named deceased.

*William Barnes* of counsel [*Abraham Greenberg*, attorney], for the appellant.

*Daniel Daly*, for the respondent.

PAGE, J.:

The special guardian of Mary Frederica Tone, the infant granddaughter of the testatrix, contested the probate of the will, which was admitted to probate after a trial of the issues. There was no testimony introduced tending to show that the testatrix was not of sound mind or that she was influenced by any person in making the will. The will was properly executed and attested. The testimony of the two witnesses thereto varied only as to one point. One, an attorney, testified that the attesta-

tion clause was read, while Mrs. Healy, the other witness, was positive that it was not. Mrs. Healy was not entirely consistent in her testimony, at first testifying that she did not see the testatrix sign the will, but when the will was exhibited to her she stated that the testatrix's name was signed before she signed as a witness and that she saw her sign the will. That the witness did not hear the attestation clause read is of no moment, as she testified to the necessary facts, that the testatrix told her, in the presence of the other witness, that the instrument was her will, and signed her name thereto in their presence and they each thereupon in the presence of each other signed the will as witnesses.

The will devised and bequeathed her residuary estate, which it is conceded was more than one-half of her entire estate, to the Church of Our Lady of Lourdes in the borough of Manhattan in fee. It is claimed that to the extent that this devise and bequest exceeds one-half of the estate it is void, by reason of the provision of section 17 of the Decedent Estate Law (Consol. Laws, chap. 13; Laws of 1909, chap. 18), which reads as follows:

" § 17. Devise or bequest to certain societies, associations and corporations. No person having a husband, wife, child or parent, shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, in trust or otherwise, more than one-half part of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of one-half, and no more."

This section was taken verbatim from chapter 360 of the Laws of 1860, and, therefore, all cases arising under that statute are applicable to the present law. The words " having a husband, wife, child or parent " speak not as of the time of the making of the will, but of the time of the death of the testator, and are equivalent to " shall die leaving a husband, wife, child or parent surviving him." (See *St. John* v. *Andrews Institute*, 191 N. Y. 254, 272.) The testatrix died, leaving neither a husband, child nor parent her surviving. It would, therefore, seem clear that the prohibition of the statute did not apply. We are asked, however, to construe the word " child " to include grandchildren. It has been

First Department, February, 1919.            [Vol. 186.

frequently held that the word " children " will also include grandchildren where the intention to use the broader sense is evident. Thus in *Prowitt* v. *Rodman* (37 N. Y. 42, 58), in construing a will wherein certain property was devised to his daughter during her life, and after her death " to such children as should be living .at the time of her death," the word " children " was construed to include " grandchildren." After an exhaustive review of the early authorities, the court says: " These authorities fully establish the two propositions for which the respondents contend: 1. That the term ' children' may include issue however remote, and will be held so to include whenever the reason of the thing demands it. * * * They all admit * * * that when the evident intention of the testator requires it, or when the estate would fail if such were not the construction, that the words ' child or children ' are to be construed as meaning issue or remote descendants."

In *Matter of Paton* (111 N. Y. 480, 486) the court said: " Chancellor Kent says in his Commentaries (Vol. 4, p. 419\*): '·Children, as well as issue, may stand, in a collective sense, for grandchildren, where the justice or reason of the case requires it.' The word ' children ' is a flexible expression, and we think that meaning should be preferred, when the reason of the thing sustains it, which permits the children of a deceased child to inherit."

This court said in *Pfender* v. *Depew* (136 App. Div. 636, 638): " It is elementary law that as a general rule the words ' child ' or ' children ' when used in a will or other document will be taken to refer to issue or descendants of the first degree, and to· exclude descendants of a more remote degree [citing authorities]. The rule, however, is not inflexible, and there are many cases in which the word will be given a wider signification and read as standing in a collective sense for grandchildren or even more remote descendants."

In construing the Statute of Distribution in regard to advancements (2 R. S. 97, § 76 *et seq.*), it was held that the word " children " in such statute included all the descendants of the intestate entitled to share in his estate. After quoting from various portions of the statute relative to the distribution

* 2d ed.— [Rep.

of intestate estates, it was found that there was a general principle of equality between the children of the intestate and the descendants of deceased children *per stirpes*. (*Beebe* v. *Estabrook*, 79 N. Y. 246.)

Where, therefore, it appears from the entire will that it was the intention of the testator, or where a different construction would give rise to partial intestacy, or where in a statute, either from the statute itself or the purpose of its enactment, or from the provisions of other cognate statutes, the intention of the Legislature is manifest, the words " child " or " children " will be given the comprehensive meaning of issue or descendants. But where there is no such intent, either of testator or Legislature, thus disclosed, the words " child " or " children " are to be given their primary and ordinary meaning of " the immediate descendants in the first degree of the person named as the ancestor." (*Palmer* v. *Horn*, 84 N. Y. 516, 521; *Matter of Pulis*, 220 id. 196, 204.) When we consider the statute involved in this case, unless we can find the legislative intent to be otherwise, we must give to the word " child " its primary and ordinary meaning. There is nothing in the act itself to suggest a different construction, nor in my opinion can any other construction be derived from the purpose of the act, as disclosed by the condition which lead to its passage. The Statute of Wills (Laws of 1787, chap. 47, § 1) excepts bodies politic and corporate from those that could be devisees. (See, also, Laws of 1801, chap. 9, § 1; 1 K. & R. 178, § 1; R. L. of 1813, chap. 23, § 1; 1 R. L. 364, § 1.) It was held that the Legislature might empower any corporation to take by devise. (*McCartee* v. *Orphan Asylum Society*, 9 Cow. 437.) An act had been passed allowing certain religious corporations (Laws of 1784, chap. 18, § 4), and special acts allowing certain corporations, to take by devise. (See, also, Laws of 1801, chap. 79, § 4; 1 K. & R. 339, § 4; R. L. of 1813, chap. 60, § 4; 2 R. L. 214, § 4.) The revisers of the statutes with the intention of reconciling these enactments reported, and it was enacted: " Such devise may be made to every person capable by law of holding real estate; but no devise to a corporation shall be valid, unless such corporation be expressly authorized by its charter, or by statute, to take by devise." (R. S. pt. 2, chap.

6, tit. 1, § 3; 2 R. S. 57, § 3. See Revisers' notes in 3 R. S. [2d ed.] 627; Decedent Estate Law, § 12.)

Prior to the act of 1860 (*supra*) the restrictions imposed by law were wholly directed to the power of the corporation to take by devise. A testator could devise his entire estate to a corporation if it had the right to take and hold such devise. In fact, the only way that land could be devised so that the same should be devoted to charitable or religious uses in perpetuity was by devising the same to a corporation organized for that purpose. (*Levy* v. *Levy*, 33 N. Y. 97.)

The act of 1860 imposed a limitation on the right of the testator to devise, under the circumstances named, more than one-half of his estate to the corporations therein specified. This statute was not a mortmain act. (*Amherst College* v. *Ritch*, 151 N. Y. 282, 333.) " It is not against public policy to allow gifts to charitable, benevolent, scientific or educational institutions. The law allows and encourages such gifts, and those who make them are commended as the benefactors of their race." (*Hollis* v. *Drew Theological Seminary*, 95 N. Y. 166, 172.)

The act, therefore, was not conceived in any hostility to such corporations, for except a man have a wife, child or parent him surviving, he can give all his estate to such corporations by will. Therefore, there is no public policy with respect to such corporations to be served by the act. " It is aimed simply at the giving of an undue proportion to charity by will, when certain near relations have, in the opinion of the Legislature, a better claim. * * * Its theory is not to keep property away from charitable corporations but to prevent a testator from giving them more than one-half of his net estate at the expense of his wife, child or parent. Its sole purpose is to protect those natural objects of his bounty from improvident gifts to their neglect. * * * It points toward no public interest, but toward the prevention of what the Legislature regarded as a private wrong. It was passed for the benefit of the persons named in it, not for the benefit of the people at large as a measure of State polity." (*Amherst College* v. *Ritch, supra; St. John* v. *Andrews Institute, supra.*)

In speaking of a will made within two months of the testator's death the court said: " Such wills become evil only,

like all wills when they fail to deal fairly and justly by those persons who have claims upon the testator's care and bounty; and the policy of the statute is to protect such persons, and this it does by a general rule.  There is no policy outside of the statute which condemns such wills.  The policy is found only in the statute and reaches no further than the statute." (*Hollis* v. *Drew Theological Seminary, supra.*)

The statute was for the benefit of those to whom the testator owed a duty which the Legislature esteemed of such sanction as to require its discharge before he could exercise his charity.

As the learned surrogate said in his opinion herein: " While a grandchild may be the natural object of his grandparent's bounty to practically the same extent as the parent of such child, the statutes do not recognize that natural right of the grandchild or obligation of the grandparent." (103 Misc. Rep. 618.)

From this review of the authorities, the history and the purpose of the statute, I am of opinion that where a testator dies leaving him surviving neither wife, child nor parent, a devise of more than half of his estate to the corporations or any of them enumerated in section 17 of the Decedent Estate Law is valid, although the testator may be survived by descendants in a more remote degree than a child.

The decree should be affirmed, with costs to the proponent and special guardian payable out of the estate.

CLARKE, P. J., DOWLING and SHEARN, JJ., concurred; SMITH, J., dissented.

SMITH, J. (dissenting):

I am unable to concur in the conclusion reached by the majority of the court.  Under the Statute of Distributions and of Descent, the policy of the State has been indicated to give a decedent's property, in case of intestacy, first to the widow and the children.  If there be no widow or children, to the grandchildren, if any, and to the parents only in default of widow, children and grandchildren.  Under the statute here for construction if the deceased had left a child, and the issue of a deceased child, the restriction of the statute would have applied and the issue of the deceased child would

have received its share of the amount devised or bequeathed in excess of one-half of the estate. If the deceased had left a parent and a grandchild, confessedly the restriction of the statute would have applied and the grandchild would have taken all the excess, to the exclusion of the parent. Under the construction which we are now giving to the statute the right of the grandchild to this excess is made dependent upon the survival of a parent who, if grandchildren survive, would take nothing thereunder. This incongruous result should in my judgment control the construction of this statute and should impel us to hold that the word " child " as used in the statute is inclusive of grandchild, and that the devise or bequest in excess of one-half of the entire estate to the charity named is void.

Decree affirmed, with costs to proponent and special guardian payable out of the estate.