IN RE WILL OF WILSON.

---

IN THE MATTER OF: THE WILL OF WILLIE SPAIN WILSON, DECEASED;
FRANK SPAIN, INDIVIDUALLY, AND AS ADMINISTRATOR C.T.A. OF THE
ESTATE OF WILLIE SPAIN WILSON, AND WIFE, MATTIE W. SPAIN,
ROBERT W. SPAIN AND WIFE, PEARL M. SPAIN, FRANKLIN H.
SPAIN AND WIFE, JEAN S. SPAIN AND WILLIAM M. SPAIN AND WIFE
BARBARA W. SPAIN, PETITIONERS V. ROBERT W. SPAIN, JR., (MINOR),
THOMAS MOODY SPAIN (MINOR), AND JOHNNY CLAUDE SPAIN
(MINOR), CHILDREN OF ROBERT W. SPAIN, DAPHNE GAY SPAIN
(MINOR) AND MARSHA LYNN SPAIN (MINOR), CHILDREN OF
FRANKLIN H. SPAIN, WILLIAM M. SPAIN, JR., (MINOR), CHILD OF
WILLIAM M. SPAIN, AND ANY UNBORN CHILDREN OF ROBERT W.
SPAIN, ROBERT W. SPAIN, JR., FRANKLIN H. SPAIN AND WILLIAM
M. SPAIN, MATTIE W. REAVIS, WIDOW, ROSA S. STAINBACK AND
HUSBAND, T. G. STAINBACK, FLORENCE S. PREDDY AND HUSBAND,
WILL PREDDY, LEWIS W. SPAIN AND WIFE, ELIZABETH P. SPAIN,
W. J. COOPER, JR., UNMARRIED, MARY C. HAMLET AND HUSBAND,
SWAYNE HAMLET, MARY W. BASKETT AND HUSBAND, CHARLES B.
BASKETT, MATTIE W. PUCKETT, LUCY W. BALL AND HUSBAND, R.
T. BALL, DAVE E. WIGGINS AND WIFE, LOLA WIGGINS, JOHN B.
WIGGINS AND WIFE, RUTH T. WIGGINS, BETTY W. HIGHT AND
HUSBAND, HARTWELL HIGHT, EDDIE JEAN WIGGINS (MINOR),
ROBERT B. WIGGINS, JR., (MINOR), WILLIAM B. BARTHOLOMEW
AND WIFE, MRS. WILLIAM B. BARTHOLOMEW, DEFENDANTS.

(Filed 20 November 1963.)

### 1. Wills § 27—

The intent of testatrix is her will and must be given effect unless contrary to some rule of law.

### 2. Same—

There is a presumption that a will was intended to dispose of all of testatrix' property without leaving a residue to pass under the laws governing intestacy.

### 3. Same—

It must be presumed that each word used by testatrix has a meaning and the court may not reject words which by reasonable interpretation may be given effect.

### 4. Wills § 42—

The word "children" is ordinarily a word of purchase and not of limitation and means immediate offspring, but the word must be construed as "heirs" or "heirs of the body" when such meaning is clearly intended from the content of the instrument.

### 5. Wills § 32—

Testatrix stated she "wanted" the land in question to go to her brother and at his death to his three sons and his named grandson, with further provision that at their deaths testatrix "wanted" the land to go to their "children & so on." *Held:* The brother took a life estate with remainder to his children and the named grandson in fee under the Rule in *Shelley's*

Case, since it is apparent that testatrix used the word "children" in the sense of an indefinite line of succession so as to attract the Rule in *Shelley's* Case and create an estate tail converted into a fee by the statute. G.S. 41-1.

APPEAL by defendants from *Walker, S.J.*, March Civil Session 1963 of VANCE.

This action was instituted to obtain a judicial interpretation of a written instrument heretofore adjudged to be the holographic will of Willie Spain Wilson. *In re Will of Wilson*, 258 N.C. 310, 128 S.E. 2d 601.

The will dated 6 June 1950 reads:

"This is my Will—

"I Willie Spain Wilson wants my brother Frank H. Spain to have at my death the home place given to me by my brother R. Claude Spain at his death—Known as the Spain place. At my brother Frank H. Spain's death I want the place to go to his three Son's Robert W. Spain, Franklin H. Spain and William M. Spain. I also want Robert W. Spain Jr. to have an equal share in the place. If all can't live and farm then sell it to the one that can at a reasonable price. At there death I want the place to go to there children & so on—I would love for it to always be the Spain place.

"What money bonds & etc I have at my death after all debts are paid I want my Sister Rosa Spain Stainback to have. I also want her to have what pecies of furniture I have, also want her to have all my personal belongings. I want a descent burial and marker put to my grave—I have two Ins. policys which I want my Sister Rosa Spain Stainback to have. I have one policy that I want my neice Claude Stainback Sharpe to have it is made payable to her."

Mrs. Spain died in March 1960. Her heirs were her brother, Frank Spain, her sisters, Rosa Stainback and Mattie Reavis, and nephews, nieces, great-nephews and great-nieces, descendants of her deceased brother, John S. Spain, and her deceased sister, Lou Wiggins. Subsequent to the institution of the action Mrs. Reavis died. Her heirs were made parties.

Mrs. Wilson's husband died in 1943. She then went to live with her brother Frank, named as a devisee. She continued to live with him and his family until her death in 1960. Frank Spain had three children, viz., Robert W., Franklin H., and William, named as devisees. Robert W. Spain, Jr., also named as a devisee, is the son of Robert W. Spain.

Mrs. Spain owned at her death a farm in Vance County containing 130 acres. This is the land referred to in the will as the "Spain place."

The court adjudged that Frank H. Spain took an estate in the farm for his natural life, that Robert W. Spain, Franklin H. Spain, Jr., William M. Spain, and Robert W. Spain, Jr., each took an estate for their respective lives in an undivided one-fourth, subject to the life estate of Franklin H. Spain, and subject to such life estates, the children of Robert W. Spain took an estate in fee in remainder in the one-fourth in which he had a life estate, the children of Franklin H. Spain, Jr. took an estate in fee in remainder in his one-fourth, the children of William W. Spain took an estate in remainder in fee in his one-fourth, and the children of Robert W. Spain, Jr. took an estate in fee in remainder in his one-fourth.

*Zollicoffer & Zollicoffer for appellees and Sterling G. Gilliam and George T. Blackburn, guardians ad litem.*

*Waddell Gholson, guardian ad litem for Eddie Jean Wiggins and Robert B. Wiggins, Jr., and William T. Watkins, Charles M. Davis, and I. Beverly Lake for respondents.*

RODMAN, J. As said by SHARP, J., in *Trust Co. v. Bryant*, 258 N.C. 482, 128 S.E. 2d 758: "The basic rule of construction, and the refrain of every opinion which seeks to comprehend a testamentary plan is that '(t)he intent of the testator is the polar star that must guide the courts in the interpretation of a will'." MOORE, J., said in *Poindexter v. Trust Co.*, 258 N.C. 371, 128 S.E. 2d 167: "The intent of the testatrix is her will and must be carried out unless some rule of law forbids it."

Testatrix did not "give," "bequeath," or "devise" her property. She "wants" (used in nine different places) certain designated persons to have designated parts of her estate. Except where she expressly "wants" a beneficiary to have a life estate in her realty, the will does not particularize the estate the beneficiary acquires.

It is, we think, apparent from the writing that Mrs. Wilson intended a complete disposition of her properties. Where one undertakes to make a will, the presumption is that the instrument disposes of all of testator's property, not leaving a residue to pass under laws governing intestacy. *Poindexter v. Trust Co., supra; Little v. Trust Co.*, 252 N.C. 229, 113 S.E. 2d 689. "Having undertaken to make a will at all, it is not consistent with sound reasoning that the testator would have left his estate dangling." *Coddington v. Stone*, 217 N.C. 714, 9 S.E. 2d 420.

Here the intent of the testatrix to limit the estate in the realty given her brother Frank is apparent. At his death she wants the place to go to three named nephews and a great-nephew. Had the will stopped

there, the named devisees would have taken an estate in fee. G.S. 31-38; *Morris v. Morris*, 246 N.C. 314, 98 S.E. 2d 298. But the will did not stop with the gift to the nephews and great-nephew who take on the termination of the life estate given to testatrix' brother Frank. She said: "At *there* death I want the place to go to *there* children & so on . . ." The language used in making the gift to the nephews and great-nephew is similar to the language used with respect to the gift to her brother. At their death she wants "the place to go to *there* children." Had she stopped with the word "children" the intent to give an undivided fourth to each of the named devisees with a remainder in that fourth to each devisee's children would be apparent. The children would take the fee. G.S. 31-38. But that interpretation would give no significance to the phrase "& so on." To reject those words would be to make a will for the testatrix and not interpret what she said. An interpretation requires an ascertainment of the meaning of the words used—each presumably has some meaning. *Maxwell v. Grantham*, 254 N.C. 208, 118 S.E. 2d 426; *Clark v. Connor*, 253 N.C. 515, 117 S.E. 2d 465; *Morris v. Morris, supra*.

What did testatrix mean by the phrase "& so on"? The phrase is equivalent to "continuing in the same manner." *Jones v. Assurance Society*, 147 N.C. 540, 61 S.E. 388, 25 L.R.A. 803. What Mrs. Wilson meant was that each succeeding generation would take the property on the death of the ancestor—an indefinite line of succession by the children upon the death of the parent. She intended that each beneficiary should take an estate for life with remainder to heirs of his body.

Layton, C.J., said in *Farrell v. Faries*, 22 A. 2d 380; "The words 'child and children' are primarily and presumptively words of purchase. Their technical and legal meaning is the immediate offspring and not an indefinite line of heirs . . . . In their natural import they are not words of limitation unless it is to comply with the intention of the testator, when they cannot take effect in any other way . . . . They are properly descriptive of a particular class or generation of issue, and point at individual acquisition, not at heritable succession . . . . Both in law and in common parlance they have only one meaning, *although they may be shown by the context to have been improperly used in the sense of descendants*." (Emphasis added.)

The same thought was expressed in *Dodson v. Ball*, 60 Pa. St. 492, 100 Am. Dec. 586, where it is said: "The decisions in all the cases show the undoubted tendency of the judicial mind in this state to follow the true intention of the donor, and whenever he means to limit an estate to the heirs of the life tenant, no matter how his intent is expressed, an estate of inheritance will vest in the tenant for life; but when he in-

tends his bounty to vest in certain persons, though they may be the same as the heirs at law, the life estate will not be enlarged . . ."

Similar statements and applications of the legal principles may be found in *Mason v. Ammon*, 11 A. 449; *Shapley v. Diehl*, 53 A. 374; *Pifer v. Locke*, 55 A. 790; *Simpson v. Reed*, 54 A. 499; *Beall v. Beall*, 162 N.E. 152; *Gould v. Ledbetter*, 150 A. 375; *In re Court's Estate*, 91 N.Y.S. 2d 881; *In re Tone's Will*, 174 N.Y.S. 391; *In re Guthrie's Appeal*, 37 Pa. St. 9. See also 47 Am. Jur. 805 and cases cited in note 19.

An important factor in ascertaining the meaning of the word "children" is, as noted in several of the cases, the fact that if the word "children" is not interpreted to mean heirs or heirs of the body, the devise may violate the rule against perpetuities, thereby resulting in at least partial intestacy. *Poindexter v. Trust Co., supra.*

Having reached the conclusion that Mrs. Wilson used the word "children" in the sense of "heirs of the body" it follows that each nephew and the great-nephew took an estate tail by virtue of the rule in *Shelley's* case, which by the statute of 1784 (G.S. 41-1) is converted into an estate in fee simple.

We conclude that Frank H. Spain, brother of testatrix, took an estate for his life in the property known as the Spain place and, subject to said life estate, his three sons, to wit, Robert W. Spain, Franklin H. Spain, and William W. Spain, and his grandson, Robert W. Spain, Jr., each took an undivided one-fourth in fee in remainder. The judgment appealed from will be modified to conform with this opinion, and as so modified, the judgment is affirmed.

Modified and affirmed.