133 S.E.2d 189 (1963)
260 N.C. 482
In the Matter of the WILL of Willie Spain WILSON, Deceased.
Frank SPAIN, Individually, and as Administrator c.t.a. of the Estate of Willie Spain Wilson, et al., Petitioners,
v.
Robert W. SPAIN, Jr. (Minor), et al., Defendants.
No. 397.
Supreme Court of North Carolina.
November 20, 1963.
*190 Zollicoffer & Zollicoffer, Henderson, for appellees.
Sterling G. Gilliam and George T. Blackburn, Henderson, guardians ad litem.
Waddell Gholson, Henderson, guardian ad litem for Eddie Jean Wiggins and Robert B. Wiggins, Jr.
William T. Watkins, Oxford, Charles M. Davis, Louisburg, and I. Beverly Lake, Raleigh, for respondents.
RODMAN, Justice.
As said by Sharp, J., in Wachovia Bank & Trust Co. v. Bryant, 258 N.C. 482, *191 128 S.E.2d 758: "The basic rule of construction, and the refrain of every opinion which seeks to comprehend a testamentary plan, is that `(t)he intent of the testator is the polar star that must guide the courts in the interpretation of a will.'" Moore, J., said in Poindexter v. Wachovia Bank & Trust Co., 258 N.C. 371, 128 S.E.2d 867: "The intent of the testatrix is her will and must be carried out unless some rule of law forbids it."
Testatrix did not "give," "bequeath," or "devise" her property. She "wants" (used in nine different places) certain designated persons to have designated parts of her estate. Except where she expressly "wants" a beneficiary to have a life estate in her realty, the will does not particularize the estate the beneficiary acquires.
It is, we think, apparent from the writing that Mrs. Wilson intended a complete disposition of her properties. Where one undertakes to make a will, the presumption is that the instrument disposes of all of testator's property, not leaving a residue to pass under laws governing intestacy. Poindexter v. Wachovia Bank & Trust Co., supra; Little v. Wachovia Bank & Trust Co., 252 N.C. 229, 113 S.E.2d 689. "Having undertaken to make a will at all, it is not consistent with sound reasoning that the testator would have left his estate dangling." Coddington v. Stone, 217 N.C. 714, 9 S.E. 2d 420.
Here the intent of the testatrix to limit the estate in the realty given her brother Frank is apparent. At his death she wants the place to go to three named nephews and a great-nephew. Had the will stopped there, the named devisees would have taken an estate in fee. G.S. § 31-38; Morris v. Morris, 246 N.C. 314, 98 S.E.2d 298. But the will did not stop with the gift to the nephews and great-nephew who take on the termination of the life estate given to testatrix' brother Frank. She said: "At there death I want the place to go to there children & so on * * *" The language used in making the gift to the nephews and great-nephew is similar to the language used with respect to the gift to her brother. At their death she wants "the place to go to there children." Had she stopped with the word "children" the intent to give an undivided fourth to each of the name devisees with a remainder in that fourth to each devisee's children would be apparent. The children would take the fee. G.S. § 31-38. But that interpretation would give no significance to the phrase "& so on." To reject those words would be to make a will for the testatrix and not interpret what she said. An interpretation requires an ascertainment of the meaning of the words usedeach presumably has some meaning. Maxwell v. Grantham, 254 N.C. 208, 118 S.E.2d 426; Clark v. Connor, 253 N.C. 515, 117 S.E.2d 465; Morris v. Morris, supra.
What did testatrix mean by the phrase "& so on"? The phrase is equivalent to "continuing in the same manner." Jones v. Provident Sav. Life Assurance Society of New York, 147 N.C. 540, 61 S.E. 388, 25 L.R.A.,N.S., 803. What Mrs. Wilson meant was that each succeeding generation would take the property on the death of the ancestoran indefinite line of succession by the children upon the death of the parent. She intended that each beneficiary should take an estate for life with remainder to heirs of his body.
Layton, C. J., said in Farrell v. Faries, 25 Del. 380, 22 A.2d 380: "The words `child and children' are primarily and presumptively words of purchase. Their technical and legal meaning is the immediate offspring and not an indefinite line of heirs. * * * In their natural import they are not words of limitation unless it is to comply with the intention of the testator, when they cannot take effect in any other way. * * * They are properly descriptive of a particular class or generation of issue, and point at individual acquisition, not at heritable succession. * * * Both in law and in common parlance they have only one meaning, although they may be shown by the context to have been improperly used *192 in the sense of descendants." (Emphasis added.)
The same thought was expressed in Dodson v. Ball, 60 Pa. 492, 100 Am.Dec. 586, where it is said: "The decisions in all the cases show the undoubted tendency of the judicial mind in this state to follow the true intention of the donor, and whenever he means to limit an estate to the heirs of the life tenant, no matter how his intent is expressed, an estate of inheritance will vest in the tenant for life; but when he intends his bounty to vest in certain persons, though they may be the same as the heirs at law, the life estate will not be enlarged * * *."
Similar statements and applications of the legal principles may be found in Mason v. Ammon, 117 Pa. 127, 11 A. 449; Shapley v. Diehl, 203 Pa. 566, 53 A. 374; Pifer v. Locke, 205 Pa. 616, 55 A. 790; Simpson v. Reed, 205 Pa. 53, 54 A. 499; Beall v. Beall, 331 Ill. 28, 162 N.E. 152; Gould v. Leadbetter, 129 Me. 101, 150 A. 375; In re Court's Estate, 196 Misc. 286, 91 N.Y.S.2d 881; In re Tone's Will, 186 App.Div. 361, 174 N.Y.S. 391; In re Guthrie's Appeal, 37 Pa. 9. See also 47 Am.Jur. 805 and cases cited in note 19.
An important factor in ascertaining the meaning of the word "children" is, as noted in several of the cases, the fact that if the word "children" is not interpreted to mean heirs or heirs of the body, the devise may violate the rule against perpetuities, thereby resulting in at least partial intestacy. Poindexter v. Wachovia Bank & Trust Co., supra.
Having reached the conclusion that Mrs. Wilson used the word "children" in the sense of "heirs of the body" it follows that each nephew and the great-nephew took an estate tail by virtue of the rule in Shelley's case, which by the statute of 1784 (G.S. § 41-1) is converted into an estate in fee simple.
We conclude that Frank H. Spain, brother of testatrix, took an estate for his life in the property known as the Spain place and, subject to said life estate, his three sons, to wit, Robert W. Spain, Franklin H. Spain, and William W. Spain, and his grandson, Robert W. Spain, Jr., each took an undivided one-fourth in fee in remainder. The judgment appealed from will be modified to conform with this opinion, and as so modified, the judgment is affirmed.
Modified and affirmed.